## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND (BALTIMORE DIVISION)

_____

UNITED STATES OF AMERICA, et al. :
                                  :
    Plaintiffs,                 :
                                  :   Civil Action No. _____
    v.                          :
                                  :
ARKEMA INC., et al.,              :
                                  :
    Defendants.                 :
_____:


## REMEDIAL DESIGN/REMEDIAL ACTION (RD/RA) CONSENT DECREE

# **TABLE OF CONTENTS**

I.      BACKGROUND ................................................................................................ 1

II.     JURISDICTION ............................................................................................... 5

III.    PARTIES BOUND ........................................................................................... 5

IV.    DEFINITIONS ................................................................................................. 6

V.     GENERAL PROVISIONS ............................................................................ 12

VI.    PERFORMANCE OF THE WORK BY SETTLING WORK DEFENDANTS ..................... 15

VII.   REMEDY REVIEW ....................................................................................... 33

VIII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS ..................................... 34

IX.    ACCESS AND INSTITUTIONAL CONTROLS ................................................. 37

X.     REPORTING REQUIREMENTS ............................................................... 43

XI.    EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES ..................... 45

XII.   PROJECT COORDINATORS ...................................................................... 47

XIII.  PERFORMANCE GUARANTEE.................................................................. 49

XIV.  CERTIFICATION OF COMPLETION........................................................... 56

XV.   EMERGENCY RESPONSE.......................................................................... 59

XVI.  PAYMENTS FOR RESPONSE COSTS ........................................................ 60

XVII. INDEMNIFICATION AND INSURANCE .................................................... 66

XVIII. FORCE MAJEURE ..................................................................................... 68

XIX.  DISPUTE RESOLUTION ............................................................................ 71

XX.   STIPULATED PENALTIES ......................................................................... 75

XXI.  COVENANTS BY PLAINTIFFS.................................................................. 79

XXII. COVENANTS BY SETTLING DEFENDANTS............................................. 83

XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION .................................................. 86

XXIV.    ACCESS TO INFORMATION ................................................................................. 88

XXV.     RETENTION OF RECORDS .................................................................................. 89

XXVI.    NOTICES AND SUBMISSIONS ........................................................................... 91

XXVII.   RETENTION OF JURISDICTION .......................................................................... 93

XXVIII.  APPENDICES ......................................................................................................... 93

XXIX.    COMMUNITY INVOLVEMENT .......................................................................... 93

XXX.     MODIFICATION ..................................................................................................... 94

XXXI.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ............................. 95

XXXII.   SIGNATORIES/SERVICE ...................................................................................... 95

XXXIII.  FINAL JUDGMENT ............................................................................................... 96

XXXIV.  RELATIONSHIP BETWEEN SETTLEMENT AGREEMENT AND CONSENT DECREE 96

# I.    BACKGROUND

A.    The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607.

B.    The United States and the State in their complaint seek, *inter alia*: (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") for response actions at the Central Chemical Superfund Site in Hagerstown, Washington County, Maryland ("Site"), together with accrued interest; and (2) performance of response actions by the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").

C.    In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Maryland (the "State") on June 16, 2008, of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.    The State has joined the United States' complaint in this matter as a plaintiff, alleging that the defendants are liable to the State under Section 107 of CERCLA, 42 U.S.C. § 9607, and Maryland Environment Article §§ 7-201 et seq.

E.    In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Department of the Interior, the Maryland Department of the Environment, and the Maryland Department of Natural Resources on August 20, 2008, of negotiations with PRPs regarding

1

the release of hazardous substances that may have resulted in injury to the natural resources under

federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent Decree.

F.      The defendants that have entered into this Consent Decree ("Settling Defendants") do not

admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaints,

nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the

Site constitutes an imminent and substantial endangerment to the public health or welfare or the

environment.

G.      In February 1997, EPA and Central Chemical Corporation entered into an Administrative

Order on Consent for Removal Response Action, Docket No. III-97-08-DC, which required the

company to construct a fence beyond the existing fence that would result in DDT contaminated soil

being present within the Central Chemical fence line.

H.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the

National Priorities List ("NPL"), set forth at 40 C.F.R. Part 300, Appendix B, by publication in the

Federal Register on September 25, 1997, 62 Fed. Reg. 50442.

I.      In response to a release or a substantial threat of a release of a hazardous substance(s) at

or from the Site, EPA entered into an Administrative Order on Consent for Remedial

Investigation/Feasibility Study, Docket No. 97-105-DC ("RI/FS AOC"), with a group of PRPs,

including Allied Signal, Inc., FMC Corporation, Novartis Corporation, Olin Corporation, Shell Oil

Company, Union Carbide Corporation, and Wilmington Securities, Inc., (collectively, "RI/FS Settling

Defendants") and commenced a Remedial Investigation and Feasibility Study ("RI/FS") for the Site in

March 2003 pursuant to 40 C.F.R. § 300.430.

J.      In cooperation with EPA and MDE, the RI/FS Settling Defendants completed a Remedial Investigation ("RI") Report, dated December 20, 2006, which was approved by EPA on February 10, 2009.  On April 1, 2009, the RI/FS Settling Defendants completed a Feasibility Study ("FS") Report that was approved by EPA on April 22, 2009.  In addition, the RI/FS Settling Defendants have completed a removal action to address waste materials present on the ground surface, demolished the Site buildings, and established a Community Liaison Panel to provide information to the community regarding the Site and to receive feedback from community members.

K.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action for Operable Unit 1  ("OU-1") on April 15, 2009, in a major local newspaper of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Director of the Hazardous Cleanup Division, EPA Region III, based the selection of the response action for OU-1 at the Site.

L.      The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD") for OU-1, executed on September 30, 2009, on which the State has given its concurrence.  The ROD includes a responsiveness summary to the public comments.  Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

M.      The RI/FS Settling Defendants performed a treatability study and pre-Remedial Design Investigation ("pre-RDI") at the Site, as set forth in the ROD, but under the authority of the RI/FS AOC, to determine the design parameters for the selected remedy.  On February 15, 2015, EPA approved the RI/FS Settling Defendants' treatability study; EPA accepted the pre-RDI report on May 11, 2015.

3

N.      On August 23, 2013, EPA entered into an Administrative Settlement Agreement and

Order on Consent for Remedial Design, Docket No. CERC-03-2013-0044, as amended on September 8,

2014 ("Settlement Agreement"), with a group of PRPs, including Arkema Inc., Bayer CropScience, LP,

E. I. Du Pont de Nemours and Company, FMC Corporation, Honeywell International, Inc., Lebanon

Seaboard Corporation, Montrose Chemical Corporation of California, News Publishing Australia

Limited,[1] Occidental Chemical Corporation, Olin Corporation, Rohm and Haas Company, Rhone-

Poulenc, Shell Oil Company, Syngenta Crop Protection, LLC, Union Carbide Corporation, and

Wilmington Securities, Inc. to commence the remedial design for the Site.  The Settlement Agreement

provides for the recovery of EPA's remedial design oversight response costs.  The Settlement

Agreement terminates upon the entry of this Consent Decree in the United States District Court for the

District of Maryland ("District Court"), which is also the Effective Date of this Consent Decree.

O.      Based on the information presently available to EPA and the State, EPA and the State

believe that the Work will be properly and promptly conducted by Settling Work Defendants if

conducted in accordance with the requirements of this Consent Decree and its appendices.

P.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy

set forth in the ROD and the Work to be performed by Settling Work Defendants shall constitute a

response action taken or ordered by the President for which judicial review shall be limited to the

administrative record.

Q.      The Parties recognize, and the Court by entering this Consent Decree finds, that this

Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent

---

[1] Although News Publishing Australia Limited signed the 2013 Settlement Agreement, 21st Century Fox America, Inc. (f/k/a
News America Incorporated, and successor to News Publishing Australia Limited) signed Amendment No. 1 to the
Settlement Agreement.

Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.     JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367, and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying complaints, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.     PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and the State and upon Settling Defendants and their heirs, successors, and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.      Settling Work Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work, and shall condition all contracts entered into hereunder for performance of the Work in conformity with the terms of this Consent Decree.  Settling Work Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.  Settling Work Defendants

shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Work Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.  DEFINITIONS

4.      Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply solely for purposes of this Consent Decree:

"Central Chemical Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3), and the Administrative Order on Consent for Remedial Investigation/Feasibility Study, Docket No. 97-105-DC.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42 U.S.C. §§ 9601-9675.

"Consent Decree" shall mean this Consent Decree for OU-1 and all appendices attached hereto (listed in Section XXVIII).  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" shall mean a calendar day unless expressly stated to be a working day.  The term "working day" shall mean a day other than a Saturday, Sunday, or federal or state holiday.  In

computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Duly Authorized Representative" shall mean a person set forth or designated in accordance with the procedures set forth in 40 C.F.R. § 270.11(b).

"Effective Date" shall mean the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs after March 18, 2014, in reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount of just

7

compensation), XV (Emergency Response), Paragraph 48 (Funding for Work Takeover), and Section

XXIX (Community Involvement).  Future Response Costs shall also include (a) all Interest on those Past

Response Costs Settling Work Defendants have agreed to pay under this Consent Decree that has

accrued pursuant to 42 U.S.C. § 9607(a) during the period from March 18, 2014, to the Effective Date;

and (b) all costs incurred prior to March 18, 2014, but paid after that date.

"Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws,

regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land,

water, and/or resource use to minimize the potential for human exposure to Waste Material at or in

connection with the Site; (b) limit land, water, and/or resource use to implement, ensure

non-interference with, or ensure the protectiveness of the Remedial Action; and/or (c) provide

information intended to modify or guide human behavior at or in connection with the Site.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA

Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1

of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in

effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

"MDE" shall mean the Maryland Department of the Environment and any successor departments

or agencies of the State.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances

Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605,

codified at 40 C.F.R. Part 300, and any amendments thereto.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an

upper or lower case letter.

"Parties" shall mean the United States, the State of Maryland, and Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through March 18, 2014, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) from December 15, 2012, through March 18, 2014.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the ROD and any modified standards established pursuant to this Consent Decree.

"Plaintiffs" shall mean the United States and the State of Maryland.

"Post-Achievement O&M" shall mean all operation and maintenance activities required to maintain the effectiveness of the Remedial Action after Performance Standards are met, as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to Section VI (Performance of the Work by Settling Work Defendants).

"Pre-Achievement O&M" shall mean all operation and maintenance activities required for the Remedial Action to achieve Performance Standards, as provided under the Operation and Maintenance Plan approved or developed by EPA pursuant to Section VI (Performance of the Work by Settling Work Defendants) until Performance Standards are met.

"Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Operable Unit 1 at the Site signed on September 30, 2009, by the Director of the Hazardous Site Cleanup Division, EPA Region III, and all attachments thereto, and any explanation of significant differences ("ESD") issued pursuant to 40 C.F.R. § 300.435(c)(2)(i).  The ROD is attached as Appendix A.

"Remedial Action" shall mean all activities Settling Work Defendants are required to perform under the Consent Decree to implement the ROD, the final Remedial Design and Remedial Action Work Plans, and other plans approved by EPA, including Pre-Achievement O&M and implementation of Institutional Controls, until the Performance Standards are met, and excluding performance of the Remedial Design, Post-Achievement O&M, and the activities required under Section XXV (Retention of Records).

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 12 (Remedial Action) and approved by EPA, and any modifications thereto.

"Remedial Design" shall mean those activities to be undertaken by Settling Work Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 11 (Remedial Design) and approved by EPA, and any modifications thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean those Parties identified in Appendix C (Settling Cash Defendants) and Appendix D (Settling Work Defendants).

"Settling Cash Defendants" shall mean those Parties listed in Appendix C, who are signatories to this Consent Decree, who will participate in this Consent Decree with the other Parties to this Consent

Decree as provided in Paragraph 6.d and are not involved in performing the Work under this Consent Decree. The term "Settling Cash Defendant" shall also apply as follows: where the Settling Cash Defendant is a trust, to its trustees and successor trustees appointed to carry out the purpose of said trust; where the Settling Cash Defendant is a corporate entity, to its corporate successors to potential liability for the Site; and where the Settling Cash Defendant is a partnership, to its partners; provided however, that the term "Settling Cash Defendant" only applies to such trustees, successor trustees, corporate successors, and partners to the extent that their alleged liability regarding the Site is based on their status and in their capacity as a trustee, successor trustee, corporate successor, or partner and not to the extent that their alleged liability arose independently of the Parties listed on Appendix C.

"Settling Work Defendants" shall mean those Parties listed in Appendix D, who are signatories to this Consent Decree, who are required to perform the Work, whether they perform the Work individually or through any legal entity that they may establish to perform the Work. The term "Settling Work Defendant" shall also apply as follows: where the Settling Work Defendant is a trust, to its trustees and successor trustees appointed to carry out the purpose of said trust, where the Settling Work Defendant is a corporate entity, to its corporate successors to potential liability for the Site; and where the Settling Work Defendant is a partnership, to its partners; provided however, that the term "Settling Work Defendant" only applies to such trustees, successor trustees, corporate successors, and partners to the extent that their alleged liability regarding the Site is based on their status and in their capacity as a trustee, successor trustee, corporate successor, or partner and not to the extent that their alleged liability arose independently of the Parties listed on Appendix D

"Site" shall mean the Central Chemical Superfund Site, encompassing approximately 19 acres, located on Mitchell Avenue within the city limits of Hagerstown, Washington County, Maryland, and

any areas where Site-related hazardous substances have come to be located. The Site is depicted generally on the map attached as Appendix B.

"State" shall mean the State of Maryland.

"Supervising Contractor" shall mean the principal contractor retained by Settling Work Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA, and any federal natural resource trustee.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous material" under Title 7 of the Maryland Environment Article.

"Work" shall mean all activities and obligations Settling Work Defendants are required to perform under this Consent Decree, except the activities required under Section XXV (Retention of Records).

## V. GENERAL PROVISIONS

5. <u>Objectives of the Parties</u>. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site by Settling Work Defendants, to pay response costs of the

United States, and to resolve the claims of Plaintiffs against Settling Defendants as provided in this Consent Decree.

6.    Commitments by Settling Defendants.

a.    Settling Work Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, and all work plans and other plans, standards, specifications, and schedules set forth in this Consent Decree or developed by Settling Work Defendants and approved by EPA pursuant to this Consent Decree. Settling Work Defendants shall pay the United States as provided in this Consent Decree.

b.    The obligations of Settling Work Defendants to finance and perform the Work, including obligations to pay amounts due under this Consent Decree, are joint and several. In the event of the insolvency of any Settling Work Defendant or the failure by any Settling Work Defendant to implement any requirement of this Consent Decree, the remaining Settling Work Defendants shall complete all such requirements.

c.    In the event that any Settling Work Defendant files for bankruptcy or is placed involuntarily in bankruptcy proceedings, such Settling Work Defendant shall notify the United States three (3) days after such filing.

d.    The Settling Cash Defendants shall cooperate with Plaintiffs and Settling Work Defendants to effectuate the purposes of this Consent Decree, including, but not limited to, those obligations set forth in Section XXV (Retention of Records). Subject to the Plaintiffs' reservation of rights set forth in Section XXI (Covenants by Plaintiffs), the Settling Cash Defendants shall have no further obligations under this Consent Decree except as otherwise specifically set forth in this Consent Decree or in any agreement between the Settling Cash Defendants and Settling Work Defendants. The

Settling Cash Defendants have paid or will pay to the Settling Work Defendants, collectively, $5,414,711.50, which, together with future payments by the Settling Cash Defendants to the Settling Work Defendants as set forth in those agreements between the Settling Defendants, Settling Cash Defendants and Settling Work Defendants agree fully satisfies the Settling Cash Defendants' payment responsibility to Settling Work Defendants under this Consent Decree.

7. <u>Compliance With Applicable Law</u>. All activities undertaken by Settling Work Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Work Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

8. <u>Permits</u>.

a. As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Work Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b. Settling Work Defendants may seek relief under the provisions of Section XVIII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8.a and required for the Work,

provided that they have submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

        c.      This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

    9.    <u>Reserved</u>.

## VI.     PERFORMANCE OF THE WORK BY SETTLING WORK DEFENDANTS

    10.    <u>Selection of Contractors</u>

        a.      <u>Supervising Contractor</u>

        (1)      All aspects of the Work to be performed by Settling Work Defendants pursuant to Sections VI (Performance of the Work by Settling Work Defendants), VIII (Quality Assurance, Sampling, and Data Analysis), IX (Access and Institutional Controls), and XV (Emergency Response) shall be conducted under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to acceptance or disapproval by EPA, after a reasonable opportunity for review and comment by the State.  Within ten (10) days after the lodging of this Consent Decree, Settling Work Defendants shall notify EPA and the State in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor.  With respect to any contractor proposed to be Supervising Contractor, Settling Work Defendants shall demonstrate that the proposed contractor has a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan ("QMP").  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued

May 2006) or equivalent documentation as determined by EPA. EPA will issue a notice of disapproval or acceptance of the proposed Supervising Contractor. If at any time thereafter, Settling Work Defendants propose to change a Supervising Contractor, Settling Work Defendants shall give such notice to EPA and the State and must obtain a notice of acceptance of such change from EPA, after a reasonable opportunity for review and comment by the State, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

(2)     If EPA disapproves of the selection of a proposed Supervising Contractor, EPA will notify Settling Work Defendants in writing. Settling Work Defendants shall submit to EPA and the State a list of contractors, including the qualifications of each contractor, that would be acceptable to them within thirty (30) days after receipt of EPA's notice of disapproval. EPA will thereafter provide written notice of the names of any contractor(s) whose selection it would accept. Settling Work Defendants may select any contractor from that list and shall notify EPA and the State of the name of the contractor selected within twenty-one (21) days after EPA's notice of acceptable contractors.

(3)     If EPA fails to provide written notice of its acceptance or disapproval as provided in this Paragraph and this failure prevents Settling Work Defendants from meeting one or more deadlines in a plan approved by EPA pursuant to this Consent Decree, Settling Work Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree.

b.     Other Contractors and Subcontractors

(1)     The Settling Work Defendants shall submit to EPA and the State for acceptance by EPA the names and qualifications of any additional contractors and subcontractors they

16

propose to use to satisfy any requirement of this Consent Decree before such contractor or subcontractor performs any Work. If EPA does not respond with a notice accepting or disapproving the proposal for additional contractors and subcontractors within fourteen (14) days after receipt by EPA of Settling Work Defendants' selections, the proposal for additional contractors and subcontractors shall be deemed accepted. In the event EPA disapproves any proposed contractor or subcontractor, Settling Work Defendants shall submit to EPA and the State a list of at least three contractors or subcontractors, including the qualifications of each, that would be acceptable to them within ten (10) days after receipt of EPA's notice of disapproval. EPA, after a reasonable opportunity for review and comment by the State, will provide written notice of the names of any contractor(s) or subcontractor(s) whose selection it would accept. Settling Work Defendants may select any contractor or subcontractor from that list and shall notify EPA and the State of the name of the contractor or subcontractor selected within five (5) days after EPA's written notice of acceptable contractors

11. Remedial Design/Remedial Action.

a. Within ninety (90) days after EPA's acceptance of the selection of the Supervising Contractor pursuant to Paragraph 10 (Selection of Contractors), Settling Work Defendants shall submit to EPA and the State a work plan for the design of the Remedial Action at the Site ("Remedial Design Work Plan"). The Remedial Design Work Plan shall be prepared by the individual(s) and/or entity(ies) responsible for completion of the Remedial Design, except to the extent such persons have been disapproved by EPA. The Remedial Design Work Plan shall provide for design of the remedy selected in the ROD, and for achievement of the Performance Standards and other requirements set forth in the ROD and this Consent Decree. Upon its approval by EPA, the Remedial Design Work Plan shall be incorporated into and enforceable under this Consent Decree. The Settling

17

Work Defendants shall also submit to EPA and the State, at the time the Remedial Design Work Plan is submitted, a Health and Safety Plan ("HASP") for field design activities that conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.       The Remedial Design Work Plan shall include plans, schedules, and methodologies for implementation of all remedial design and pre-design tasks, including, but not limited to, plans and schedules for the completion of:

(1)       the preparation and submission of a Preliminary Design Submittal (the preliminary design begins with the initial design and ends with the completion of approximately 30% of the design effort) containing, at a minimum:

(a)       a preliminary Design Criteria Report, including:

i.   project description;

ii.  performance standard verification plan to define performance standards, points of compliance, measurement domains, and measurement parameters;

iii. design requirements and provisions;

iv.  preliminary process flow diagrams; and

v.   general operation & maintenance requirements;

(b)       a preliminary Basis of Design Report, including:

i.   identification of design assumptions;

      ii.  identification of uncertainties that could affect achievement of performance standards;

      iii.  a project delivery strategy;

      iv.  remedial action plan for required permits; and

      v.  preliminary easement/access requirements;

(c)    Preliminary Drawings and Specifications, including:

      i.  outline of general specifications and Construction Quality Assurance Plan ("CQAP");

      ii.  preliminary schematics and drawings;

      iii.  chemical and geotechnical data (including data from pre-design activities);

(d)    a preliminary Remedial Design Contingency Plan;

(e)    a Value Engineering Analysis;

(f)    a preliminary Remedial Action schedule

(g)    a preliminary Remedial Action contingency plan;

(h)    an annotated outline of the Remedial Action Health and Safety Plan ("HASP");

(i)    an annotated outline of the Remedial Action Waste Management Plan;

(j)    an annotated outline of the Remedial Action Sampling and Analysis Plan;

(k)    a preliminary Remedial Action decontamination plan;

19

(l)    a preliminary Operation & Maintenance Plan; and

(m)    a preliminary project delivery strategy.

(2)    the preparation and submission of a draft-final design submittal which shall be submitted at approximately 90% percent of the design effort and shall address all of EPA's comments to the Preliminary Design Submittal, and, at a minimum, additionally include:

(a)    a draft-final Design Criteria Report;

(b)    a draft-final Basis of Design Report;

(c)    a draft-final Drawings and Specifications;

(d)    a draft-final CQAP (CQAP, which shall detail the approach to quality assurance during construction activities at the Site, shall specify a quality assurance official ("QA Official"), independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project);

(e)    a draft-final Remedial Design Contingency Plan;

(f)    any draft-final Value Engineering Analysis;

(g)    a draft-final Remedial Action schedule;

(h)    a draft-final Remedial Action contingency plan;

(i)    a draft-final Remedial HASP for EPA acceptance;

(j)    a draft-final Remedial Action Waste Management Plan;

(k)    a draft-final Remedial Action Sampling and Analysis Plan;

(l)    a draft-final Remedial Action decontamination plan;

(m)    a draft-final Operation & Maintenance Plan; and

(n)     a draft-final project delivery strategy.

(3)     the preparation and submission of a final design submittal which shall be submitted at 100% of the design effort and shall address all of EPA's comments to the draft-final design, and, at a minimum, additionally include:

(a)     a final Design Criteria Report;

(b)     a final Basis of Design Report;

(c)     final Drawings and Specifications;

(d)     a final CQAP;

(e)     a final Remedial Design Contingency Plan;

(f)     a final Value Engineering Analysis

(g)     a final Remedial Action schedule;

(h)     a final Remedial Action contingency plan;

(i)     a final Remedial Action HASP for EPA acceptance;

(j)     a final Remedial Action Waste Management Plan;

(k)     a final Remedial Action Sampling and Analysis Plan (directed at measuring progress towards meeting the Performance Standards);

(l)     a final Remedial Action decontamination plan;

(m)     a final Operation & Maintenance Plan;

(n)     a final project delivery strategy.

(4)     a Remedial Design schedule.

c.     Upon approval of the Remedial Design Work Plan by EPA, after a reasonable opportunity for review and comment by the State, and submission of the Health and Safety Plan for all

21

field activities to EPA and the State, Settling Work Defendants shall implement the Remedial Design Work Plan.  Settling Work Defendants shall submit to EPA and the State all plans, reports, and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables).  Unless otherwise directed by EPA, Settling Work Defendants shall not commence further Remedial Design activities at the Site prior to approval of the Remedial Design Work Plan.

        d.      Upon approval, approval with conditions, or modification by EPA, as provided in Section XI (EPA Approval of Plans and Other Submissions), of all components of the final design submittal, the final design submittal shall serve as the Remedial Action Work Plan and shall be enforceable under this Consent Decree.  The Settling Work Defendants shall implement the activities required under the Remedial Action Work Plan in accordance with the schedules and methodologies contained therein.

        e.      The Settling Work Defendants shall submit all plans, submittals, or other deliverables required under the Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).  Unless otherwise directed by EPA or required under the Remedial Design Work Plan, the Settling Work Defendants shall not commence physical activities at the Site prior to the date for commencement set forth in the approved schedule in the Remedial Action Work Plan.

      12.    <u>Resident Engineer</u>.  Following EPA approval, approval with conditions, or modification by EPA, as provided in Section XI (EPA Approval of Plans and Other Submissions), of all components of the final design submittal, and prior to commencement of any on-Site Work under the Remedial Action Work Plan, the Settling Work Defendants shall submit to EPA and the State the name and

qualifications of a Resident Engineer to be present at the Site during construction to ensure that the

Work is performed in accordance with the approved Remedial Action Work Plan.  The Resident

Engineer shall be familiar with all aspects of the Remedial Design approved by EPA.  EPA retains the

right to disapprove the use of any Resident Engineer proposed by Settling Work Defendants.  In the

event EPA disapproves the use of any proposed Resident Engineer, Settling Work Defendants shall

submit to EPA and the State a list of at least three replacements, including the qualifications of each,

who would be acceptable to them within five (5) days of receipt of EPA's notice.  EPA, after a

reasonable opportunity for review and comment by the State, will provide written notice of the names of

any replacements whose use it would accept.  Settling Work Defendants may select any replacement

from the EPA notice and shall notify EPA and the State of the name of the replacement selected within

three (3) days of EPA's written notice.  Settling Work Defendants shall ensure that the Resident

Engineer performs on-Site inspections as necessary to ensure compliance with the approved Remedial

Action Work Plan and that the results of such inspections are promptly provided to Settling Work

Defendants, EPA, and the State.  The Resident Engineer may act as the QA Official.

      13.    Settling Work Defendants shall continue to implement the Remedial Action until the

Performance Standards are achieved.  Settling Work Defendants shall implement Post-Achievement

O&M so long thereafter as is otherwise required under this Consent Decree.


      14.    <u>Modification of the Work</u>

      a.    If EPA determines that it is necessary to modify the Work to achieve and maintain

the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the

ROD, EPA may: (1) require that such modification be incorporated into the Remedial Design Work

Plan, Remedial Action Work Plan, Operation and Maintenance Plan, and/or any other plan relating to such Work; and/or (2) require that Settling Work Defendants submit a plan for EPA approval which incorporates such modification to the Work and implement such approved plan. Provided, however, that a modification may be required pursuant to this Paragraph only to the extent that it is consistent with the scope of the remedy set forth in the ROD.

b. For the purposes of this Paragraph 14 and Paragraphs 50 (Completion of the Remedial Action) and 51 (Completion of the Work) only, the "scope of the remedy set forth in the ROD" means the selected remedy as described in Section 2.12 of the ROD. Unless otherwise expressly provided in this Consent Decree, the terms used in this paragraph that relate to the Work performed at the Site, but are not defined in Section IV of this Consent Decree, shall have the meaning assigned to them in the ROD, which is attached to this Consent Decree as Appendix A. The "scope of the remedy" includes, but is not limited to:

(1) Conduct a pre-Remedial Design Investigation ("pre-RDI"). The pre-RDI will include:

(a) Additional soil sampling and analyses to further define extent of soil excavation areas in Domains 1, 2, and 3.

(b) Subsurface investigation to evaluate areas of the Site where Site-related principal threat waste materials may have been buried. These areas are located within Domain 2 and Domain 3, and will be identified by EPA during the pre-RDI work planning. Principal threat wastes include containers of hazardous substances, non-aqueous phase liquids, powders, and sludge.

(c)     Additional characterization in the vicinity of the Liquid Pesticide building, and an area of petroleum impacted soil that was identified during the RI.

(d)     Reserved.

(e)     Additional characterization of the physical dimensions and materials present in the Former Waste Lagoon.

(f)     Aquifer testing to assist with the design of the ground water monitoring, extraction and treatment system discussed in subparagraph b(7), below.

(g)     Additional soil samples will be collected at adjacent properties and analyzed for Site-related contaminants to determine if there is an unacceptable risk posed by the soils.

(2)     Perform Solidification/Stabilization treatment of the contents of the Former Waste Lagoon which meet the following performance standards (based on the results of the treatability study):

(a)     Unconfined compressive strength:  Treat the contents of the Former Waste Lagoon using Solidification/Stabilization such that the solidified/stabilized monolith exhibits an average unconfined compressive strength equal to or greater than 50 pounds per square inch (lb/in2) as measured by ASTM D1633 (or substantial equivalent) with no performance sample testing less than 40 lb/in2.

(b)     Permeability:  Treat the contents of the Former Waste Lagoon using Solidification/Stabilization such that the solidified/stabilized monolith exhibits an average permeability equal to or less than 1x10-6 centimeters per second (cm/sec) as

25

measured by ASTM D5084 (or substantial equivalent). No sample will exhibit

permeability greater than 1x10-5 cm/sec.

       (c)    Leachability:  Treat the contents of the Former Waste Lagoon

using Solidification/Stabilization such that leaching of contaminants from the Former

Waste Lagoon, as measured by Synthetic Precipitation Leaching Procedure (SPLP) (EPA

SW846 Method 1312, or substantial equivalent), is significantly reduced and

contaminated leachate from the Former Waste Lagoon will not create ground water

contamination above ground water remediation standards at the boundary of the Central

Chemical property.

The RI/FS for ground water contamination at the Site is currently being developed.

However, for the purposes of the treatability study, interim ground water remediation

standards at the Site are included in Table 12 of the ROD.

       (3)    Contents of the Former Waste Lagoon which cannot be successfully

treated by Solidification/Stabilization (i.e. do not achieve the Solidification/Stabilization performance

standards described in #2, above) will be excavated and transported off-Site, with treatment as

necessary, and disposed of off-Site at an off-Site waste disposal facility in accordance with CERCLA

§121(d)(3).

       (4)    Excavate contaminated soils above Site-specific Soil Remediation

Standards, set forth in Table 13 of the ROD, from Domain 1, Domain 2 (outside footprint of Former

Waste Lagoon) and Domain 3.  Confirmation sampling will be performed at the completion of

excavation activities to demonstrate compliance with the Soil Remediation Standards included in Table 13 of the ROD.

(a) Concrete slabs and foundations. Remove concrete slabs and foundations to the extent needed to promote efficient remediation of soils. If the concrete slabs and foundations present in Domain 1 are to remain in-place, confirmation sampling beneath the concrete slabs and foundations will be necessary. If the removed slabs or foundations are contaminated, they shall be disposed off-Site in accordance with CERCLA §121(d)(3).

(b) Demonstration of Attainment of Soil Remediation Standards. A description of the Soil Remediation Standards, included in Table 13 of the ROD, and the method to demonstrate attainment of the Soil Remediation Standards is included as follows:

Soil Remediation Standards for protection of human health (direct contact)

Soil Remediation Standards for protection of human health (direct contact) have been established for future indoor site workers on the Central Chemical property (identified as "ISW" on Table 13 of the ROD), and future construction workers on the Central Chemical property (identified as "CW" on Table 13 of the ROD).

As indicated on Table 13 of the ROD, the Soil Remediation Standards for protection of human health (direct contact) are 95% Upper Confidence Limit (UCL) values. At the completion of excavation of contaminated soil in accordance with the Selected Remedy, attainment of the Soil Remediation Standards will be demonstrated by collection of confirmation soil samples, and generation of a 95% UCL value for each COC based upon

27

protection of human health (direct contact).  If the 95% UCL values generated for each COC are less than or equal to their respective Soil Remediation Standard, the Soil Remediation Standards will be deemed attained.  However, no single location on the Central Chemical property can exhibit COC concentrations greater than ten times (10x) their respective Soil Remediation Standards.

A maximum depth of excavation for achievement of the Soil Remediation Standards for protection of human health (direct contact) has been established as 10' below ground surface.

Soil Remediation Standards for protection of ecological receptors

Soil Remediation Standards for protection of ecological receptors have been established for Central Chemical property (identified as "ECO" on Table 13 of the ROD).

As indicated on Table 13 of the ROD, the Soil Remediation Standards for protection of ecological receptors are 95% UCL values.  At the completion of excavation of contaminated soil in accordance with the Selected Remedy, attainment of the Soil Remediation Standards will be demonstrated by collection of confirmation soil samples, and generation of a 95% UCL value for each COC based upon protection of ecological receptors.  If the 95% UCL values generated for each COC are less than or equal to their respective Soil Remediation Standard, the Soil Remediation Standards will be deemed attained.  However, no single location on the Central Chemical property can exhibit COC concentrations greater than ten times (10x) their respective Soil Remediation Standards.

A maximum depth of excavation for achievement of the Soil Remediation Standards for protection of ecological receptors has been established as 2' below ground surface.

<u>Soil Remediation Standards for protection of ground water</u>

Soil Remediation Standards for protection of ground water have been established for Central Chemical property (identified as "GW" on Table 13 of the ROD).

As indicated on Table 13 of the ROD, the Soil Remediation Standards for protection of ground water are not-to-exceed values.

(c)   <u>Restoration</u>.  The excavated areas shall be backfilled with clean fill and compacted in 6-inch lifts to the original grade.  A minimum 4-inch layer of topsoil should be applied, a vegetative cover established, and complete restoration performed over the affected area.

(5)   Consolidate the excavated soils from subparagraph b(4) above on the footprint of the solidified/stabilized Former Waste Lagoon area.  If it is determined during the remedial design, or during the remedial action, that the volume of contaminated soil at the Site cannot be consolidated within the boundaries of the cover system (Consolidation Area) set forth in subparagraph b(6), below, then the excess contaminated soil will be disposed of off-Site at an appropriate off-Site waste disposal facility in accordance with CERCLA §121(d)(3).

(6)   Construct, maintain, and periodically inspect an engineered low permeability cover system over the consolidated contaminated soils and Former Waste Lagoon area ("Consolidation Area").  The approximate extent of the low permeability cover system/Consolidation Area is depicted in Figure 13, attached to the ROD.  As depicted in Figure 13, the low permeability cover system/Consolidation Area will be present in the northern portion of the Central Chemical property.  The approximate dimension of the low permeability cover system/Consolidation Area is 380 feet by 480 feet.  The maximum height of the low permeability cover system will be approximately

29

seven to twelve feet above existing grade. Maximum slopes of the cover system will be approximately 18 degrees.

Performance standards for the low permeability cover system are:

(a)     Have a permeability of less than or equal to 1x10-7 cm/sec.

(b)     Provide long-term minimization of migration of liquids through cover system, consolidated soils and treated Former Waste Lagoon.

(c)     Function with minimum maintenance, for example through the use of warm season grasses and other native vegetation.

(d)     Promote drainage and minimize erosion or abrasion of the cover system.

(e)     Accommodate settling and subsidence to maintain the cover system's integrity.

(7)     Capture contaminated ground water/leachate in the vicinity of the Consolidation Area by installation, operation, maintenance, and periodic monitoring of a ground water monitoring, extraction and treatment system. The ground water monitoring, extraction and treatment system shall be designed and operated to ensure that contaminated ground water in the vicinity of the Consolidation Area is captured to prevent migration of contaminated ground water which exceeds the standards on Table 12 of the ROD, beyond the boundary of the Consolidation Area. Treat captured ground water to meet applicable Federal pre-treatment standards.

(8)     The discharge point for the treated ground water will be the Hagerstown public sewer system in accordance with applicable Federal pre-treatment standards.

(9)     Use of the Central Chemical property shall be limited to commercial/industrial use, and ensure maintenance and prevent disturbance of the low permeability cover system and ground water monitoring, extraction, and treatment system, through establishment and implementation of institutional controls.

(10)     Principal threat wastes identified outside of the Former Waste Lagoon area on the Site shall be excavated and transported off-Site, with treatment as necessary, and disposed of off-Site at an off-Site waste disposal facility in accordance with CERCLA §121(d)(3).  Principal threat wastes include containers of hazardous substances, non-aqueous phase liquids, powders, and sludge.

(11)     No further action is included in the Selected Remedy for OU-1 with regard to sediments and surface water.

c.     If Settling Work Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 79 (Record Review).  The Remedial Design Work Plan, Remedial Action Work Plan, Operation and Maintenance Plan, and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.     Settling Work Defendants shall implement any work required by any modifications incorporated in the Remedial Design Work Plan, Remedial Action Work Plan, Operation and Maintenance Plan, and/or other work plans developed in accordance with this Paragraph.

e.     Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

15.     Settling Work Defendants acknowledge and agree that nothing in this Consent Decree or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any

kind by Plaintiffs that compliance with the work requirements set forth in the Work Plans will achieve the Performance Standards.

     16.    <u>Off-Site Shipment of Waste Material</u>.

     a.    Settling Work Defendants may ship Waste Material from the Site to an off-Site facility only if they verify, prior to any shipment, that the off-Site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440, by obtaining confirmation from EPA that the proposed receiving facility is operating in compliance with 42 U.S.C. § 9621(d)(3) and 40 C.F.R. § 300.440.

     b.    Settling Work Defendants may ship Waste Material from the Site to an out-of-state waste management facility only if, prior to any shipment, they provide written notice to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator.  This notice requirement shall not apply to any off-Site shipments when the total quantity of all such shipments will not exceed ten cubic yards.  The Settling Work Defendants shall include in the written notification the following information, where available:

     (1)    the name and location of the facility to which the Waste Material is to be shipped;

     (2)    the type and quantity of the Waste Material to be shipped;

     (3)    the expected schedule for the shipment of the Waste Material; and

     (4)    the method of transportation.

     c.    The Settling Work Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

d.      The identity of the receiving facility and state will be determined by the Settling Work Defendants following the award of the contract for Remedial Action construction.  The Settling Work Defendants shall provide the information required by Paragraph 16.b as soon as practicable after the award of the contract but in no case less than seven (7) days before the Waste Material is actually shipped.

e.      Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-site location, Settling Work Defendants shall obtain EPA's confirmation that the proposed receiving facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA and 40 C.F.R. § 300.440.  Settling Work Defendants shall only send hazardous substances, pollutants, or contaminants from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII.    REMEDY REVIEW

17.     <u>Periodic Review</u>.  Settling Work Defendants shall conduct any studies and investigations that EPA requests in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and any applicable regulations.

18.     <u>EPA Selection of Further Response Actions</u>.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

19.     <u>Opportunity to Comment</u>.  Settling Work Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. § 9613(k)(2) or 9617, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the

review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

20.     Reserved.

21.     Reserved.

## VIII.   QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

22.     Quality Assurance.

a.      While conducting all sample collection and analysis activities required by this Consent Decree, the Settling Work Defendants shall implement quality assurance, quality control, and chain of custody procedures in accordance with "EPA Requirements for Quality Assurance Project Plans (EPA QA/R-5)"(EPA 240 B-01 003, March 2001, reissued May 2006); "EPA NEIC Policies and Procedures Manual," (May 1986) (EPA 330/978-001-R); "National Functional Guidelines for Inorganic Data Review" (EPA 540/R-94/013) and "Modifications to the National Functional Guidelines for Inorganic Data Review" (EPA Region III: April 1993); "National Functional Guidelines for Organic Data Review" (EPA 540/R-94/012) and "Modifications to the National Functional Guidelines for Organic Data Review" (EPA Region III: September 1994); "Region III Innovative Approaches to Data Validation," (EPA Region III: September 1994); "Data Quality Objectives Process for Superfund," (EPA 540/R-93/071: September 1994); and subsequent amendments to such guidelines upon notification by EPA to Settling Work Defendants of such amendment.   Amended guidelines shall apply only to procedures conducted after such notification.

b.      Prior to the commencement of any monitoring project under this Consent Decree, Settling Work Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") for the Work that is consistent

with the NCP, and the guidance documents cited above.  If relevant to the proceeding, the Parties agree

that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by

EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.

Settling Work Defendants shall ensure that EPA and State personnel and their authorized representatives

are allowed access at reasonable times to all laboratories utilized by Settling Work Defendants in

implementing this Consent Decree.  In addition, Settling Work Defendants shall ensure that such

laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance

monitoring.  Settling Work Defendants shall ensure that the laboratories they utilize for the analysis of

samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA

methods.  Accepted EPA methods consist of those methods that are documented in the "USEPA

Contract Laboratory Program Statement of Work for Inorganic Analysis, ILM05.4," and the "USEPA

Contract Laboratory Program Statement of Work for Organic Analysis, SOM01.2," and any

amendments made thereto during the course of the implementation of this Consent Decree; however,

upon approval by EPA, after opportunity for review and comment by the State, Settling Work

Defendants may use other analytical methods that are as stringent as or more stringent than the CLP-

approved methods.  Settling Work Defendants shall ensure that all laboratories they use for analysis of

samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent quality

assurance/quality control ("QA/QC") program.  Settling Work Defendants shall use only laboratories

that have a documented Quality System that complies with ANSI/ASQC E4-1994, "Specifications and

Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology

Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality

Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent

documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. Settling Work Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree are conducted in accordance with the procedures set forth in the QAPP approved by EPA.

23. Upon request, Settling Work Defendants shall allow split or duplicate samples to be taken by EPA and the State or their authorized representatives. Settling Work Defendants shall notify EPA and the State not less than twenty-eight (28) days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA and the State shall have the right to take any additional samples that EPA or the State deems necessary. Upon request, EPA and the State shall allow Settling Work Defendants to take split or duplicate samples of any samples they take as part of Plaintiffs' oversight of Settling Work Defendants' implementation of the Work.

24. Settling Work Defendants shall submit to EPA and the State electronic copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Work Defendants with respect to the Site and/or the implementation of this Consent Decree, in a manner that enables EPA to incorporate such data into an Environmental Quality Information System ("EQuIS") data management system, unless EPA agrees otherwise.

25. Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## IX.    ACCESS AND INSTITUTIONAL CONTROLS

26.    If the Site, or any other real property where access or land/water use restrictions are needed, is owned or controlled by any of Settling Work Defendants:

a.    such Settling Work Defendants shall, commencing on the date of lodging of the Consent Decree, provide the United States, the State, and the other Settling Work Defendants, and their representatives, contractors, and subcontractors, with access at all reasonable times to the Site, or such other real property, to conduct any activity regarding the Consent Decree including, but not limited to, the following activities:

(1)    Monitoring the Work;

(2)    Verifying any data or information submitted to the United States or the State;

(3)    Conducting investigations regarding contamination at or near the Site;

(4)    Obtaining samples;

(5)    Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)    Assessing implementation of quality assurance and quality control practices as defined in the approved CQAP;

(7)    Implementing the Work pursuant to the conditions set forth in Paragraph 100 (Work Takeover);

(8)    Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Work Defendants or their agents, consistent with Section XXIV (Access to Information);

37

(9)      Assessing Settling Work Defendants' compliance with the Consent Decree;

(10)     Determining whether the Site or other real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

(11)     Implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls.

b.     commencing on the date of lodging of the Consent Decree, such Settling Work Defendants shall not use the Site, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action or Post-Achievement O&M. The restrictions shall include, but not be limited to:

(1)     Limit the reuse of the Central Chemical property to commercial/industrial use.

(2)     Prevent disturbance of the low permeability cover system and ground water monitoring, extraction and treatment system, through establishment and implementation of institutional controls.

c.     such Settling Work Defendants shall:

(1)     execute and record in the Office of the Clerk of the Circuit Court for Washington County, Maryland, pursuant to Sections 1-801 to 1-815 of the Maryland Uniform Environmental Covenants Act, Md. Environment Code Ann. §§ 1-801 to 1-815, Proprietary Controls in the form of an environmental covenant ("Environmental Covenant") that: (i) grants

a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 26.a; and (ii) grants the right to enforce the land/water use restrictions set forth in Paragraph 26.b, including, but not limited to, the specific restrictions listed therein, as further specified in this Paragraph 26.c. The Environmental Covenant shall be in substantially the form set forth in Appendix E and enforceable under the laws of the State of Maryland.

(2) grant the Environmental Covenant to the other Settling Work Defendants ("Holder Settling Defendants"). The Holder Settling Work Defendants shall monitor, maintain, report on and enforce such Environmental Covenant. The Environmental Covenant shall specify EPA and the State as "agencies," as defined by Md. Environment Code Ann. § 1-801(c), which shall have the right to enforce the covenant, pursuant to Md. Environment Code Ann. § 1-810.

(3) within sixty (60) days after the Effective Date, submit to EPA for review and approval regarding such real property (i) the draft Environmental Covenant in substantially the form attached hereto as Appendix D, that is enforceable under the laws of the State of Maryland; and (ii) a current title report or other evidence of title (hereinafter collectively referred to as "Title Evidence") acceptable to EPA, that shows title to the land affected by the Environmental Covenant to be free and clear of all prior liens and encumbrances (except in the event that EPA waives the release or subordination of such prior liens or encumbrances or in the event that, despite best efforts, Settling Work Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

(4)     within fifteen (15) days after EPA's approval and acceptance of the Environmental Covenant and the Title Evidence, update the Title Evidence and, if it is determined that nothing has occurred since the original Title Evidence submitted pursuant to Paragraph 26.c(1)ii, above to affect the title adversely, record the Environmental Covenant with the Office of the Clerk of the Circuit Court for Washington County, Maryland. Within thirty (30) days of recording the Environmental Covenant, such Settling Work Defendants shall provide EPA with final Title Evidence and a certified copy of the original recorded Environmental Covenant showing the clerk's recording stamps.

27.     If the Site, or any other real property where access and/or land/water use restrictions are needed, is owned or controlled by persons other than any of the Settling Defendants:

a.     Settling Work Defendants shall use best efforts to secure from such persons:

(1)     an agreement to provide access thereto for the United States, the State, and Settling Work Defendants, and their representatives, contractors, and subcontractors, to conduct any activity regarding the Consent Decree including, but not limited to, the activities listed in Paragraph 26.a;

(2)     an agreement, enforceable by Settling Work Defendants and the United States, to refrain from using the Site, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.  The agreement shall include, but not be limited to, the land/water use restrictions listed in Paragraph 26.b; and

(3)     the execution and recordation in the Office of the Clerk of the Circuit

Court for Washington County, Maryland, pursuant to Sections 1-801 to 1-815 of the Maryland

Uniform Environmental Covenants Act, Md. Environment Code Ann. §§ 1-801 to 1-815,

Proprietary Controls in the form of an Environmental Covenant that (i) grants a right of access

to conduct any activity regarding the Consent Decree including, but not limited to, those

activities listed in Paragraph 26.a, and (ii) grants the right to enforce the land/water use

restrictions set forth in Paragraph 26.b, including, but not limited to, the specific restrictions

listed therein.  If any Environmental Covenants are granted to the Settling Work Defendants

pursuant to this Paragraph 27.a(3) , then the Settling Work Defendants shall monitor, maintain,

report on and enforce such Environmental Covenants.  The Environmental Covenant shall

specify EPA and the State as "agencies," as defined by Md. Environment Code Ann. § 1-

801(c), which shall have the right to enforce the covenant, pursuant to Md. Environment Code

Ann. § 1-810.

b.     Within sixty (60) days after the Effective Date, Settling Work Defendants shall

submit to EPA for review and approval regarding such real property: (i) the draft Environmental

Covenant in substantially the form attached hereto as Appendix E, that is enforceable under the laws of

the State of Maryland; and (ii) Title Evidence acceptable to EPA, that shows title to the land affected by

the Environmental Covenant to be free and clear of all prior liens and encumbrances (except when EPA

waives the release or subordination of such prior liens or encumbrances or when, despite best efforts,

Settling Work Defendants are unable to obtain release or subordination of such prior liens or

encumbrances).

41

c.      Within fifteen (15) days of EPA's approval and acceptance of the Environmental Covenant and Title Evidence, Settling Work Defendants shall update the Title Evidence and, if it is determined that nothing has occurred since the original Title Evidence submitted pursuant to Paragraph 28.b, to affect the title adversely, the Settling Work Defendants shall record the Environmental Covenant with the Office of the Clerk of the Circuit Court, Washington County, Maryland.  Within thirty (30) days after the recording of the Environmental Covenant, Settling Work Defendants shall provide EPA with final Title Evidence and a certified copy of the original recorded Environmental Covenant showing the clerk's recording stamps.

28.      For purposes of Paragraphs 26.c(3), 27.a and 27.b, "best efforts" includes the payment of reasonable sums of money to obtain access, an agreement to restrict land/water use Proprietary Controls, in the form of an Environmental Covenant, and/or an agreement to release or subordinate a prior lien or encumbrance.  If, within forty-five (45) days after the Effective Date, Settling Work Defendants have not: (a) obtained agreements to provide access, restrict land/water use Proprietary Controls, or record an Environmental Covenant, as required by Paragraph 27.a(1), 27.a(2), or 27.a(3) ; or (b) obtained, pursuant to Paragraph 26.c(3) or 27.b, agreements from the holders of prior liens or encumbrances to release or subordinate such liens or encumbrances to the Environmental Covenant, Settling Work Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Work Defendants have taken to attempt to comply with Paragraph 26 or 27.  The United States may, as it deems appropriate, assist Settling Work Defendants in obtaining access, agreements to restrict land/water use, Environmental Covenants, or the release or subordination of a prior lien or encumbrance.  Settling Work Defendants shall reimburse the United States under Section XVI (Payments for Response Costs) for all costs incurred, direct or indirect, by the United

States in obtaining such access, agreements to restrict land/water use Proprietary Controls,
Environmental Covenants, and/or the release/subordination of prior liens or encumbrances including,
but not limited to, the cost of attorney time and the amount of monetary consideration paid or just
compensation.

29. If EPA determines that Institutional Controls in the form of state or local laws,
regulations, ordinances, zoning restrictions, or other governmental controls are needed at or in
connection with the Site, Settling Work Defendants shall cooperate with EPA's and the State's efforts to
secure and ensure compliance with such governmental controls.

30. Notwithstanding any provision of the Consent Decree, the United States and the State
retain all of their access authorities and rights, as well as all of their rights to require Institutional
Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other
applicable statute or regulations.

## X.   REPORTING REQUIREMENTS

31. In addition to any other requirement of this Consent Decree, Settling Work Defendants
shall submit electronically to EPA a monthly progress report that: (a) describes the actions that have
been taken toward achieving compliance with this Consent Decree during the previous month;
(b) includes a summary of all results of sampling and tests and all other data received or generated by
Settling Work Defendants or their contractors or agents in the previous month; (c) identifies all plans,
reports, and other deliverables required by this Consent Decree completed and submitted during the
previous month; (d) describes all actions, including, but not limited to, data collection and
implementation of work plans, that are scheduled for the next six weeks and provide other information
relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts

and Pert charts; (e) includes information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) includes any modifications to the work plans or other schedules that Settling Work Defendants have proposed to EPA or that have been approved by EPA; and (g) describes all activities undertaken in support of the Community Involvement Plan during the previous month and those to be undertaken in the next six weeks. Settling Work Defendants shall submit these progress reports to EPA and the State by the fifteenth day of every month following the lodging of this Consent Decree. If requested by EPA or the State, Settling Work Defendants shall also provide briefings for EPA and the State to discuss the progress of the Work.

32.     Settling Work Defendants shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity. Notwithstanding the foregoing, the Settling Work Defendants shall notify EPA of any change in the schedule described in the monthly progress reports for the performance of data collection no later than thirty (30) days prior to the performance of such activity.

33.     Upon the occurrence of any event during performance of the Work that Settling Work Defendants are required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-know Act ("EPCRA"), 42 U.S.C. § 11004, Settling Work Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator nor Alternate EPA

Project Coordinator is available, the EPA Region III Hotline at (215) 814-3255. These reporting

requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

34.     Within twenty (20) days after the onset of such an event, Settling Work Defendants shall

furnish to EPA and the State a written report, signed by Settling Work Defendants' Project Coordinator,

setting forth the events that occurred and the measures taken, and to be taken, in response thereto.

Within thirty (30) days after the conclusion of such an event, Settling Work Defendants shall submit a

report setting forth all actions taken in response thereto.

35.     Settling Work Defendants shall submit electronically all plans, reports, data, and other

deliverables required by the Remedial Design Work Plan, the Remedial Action Work Plan, or any other

approved plans to EPA in accordance with the schedules set forth in such plans. Settling Work

Defendants shall simultaneously submit electronically all such plans, reports, data, and other

deliverables to the State. Upon request by EPA, Settling Work Defendants shall submit in hard copy

form all or any portion of any deliverables Settling Work Defendants are required to submit pursuant to

the provisions of this Consent Decree.

36.     All reports and other documents submitted by Settling Work Defendants to EPA (other

than the monthly progress reports referred to above) that purport to document Settling Work

Defendants' compliance with the terms of this Consent Decree shall be signed by a Duly Authorized

Representative of Settling Work Defendants.


## XI.     EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES

37.     <u>Initial Submissions</u>.

a.      After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (1) approve, in whole or in part, the submission; (2) approve the submission upon specified conditions; (3) disapprove, in whole or in part, the submission; or (4) any combination of the foregoing.

b.      EPA also may modify the initial submission to cure deficiencies in the submission if: (1) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (2) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

38.     Resubmissions.  Upon receipt of a notice of disapproval under Paragraph 37.a(3) or (4), or if required by a notice of approval upon specified conditions under Paragraph 37.a(2), Settling Work Defendants shall, within thirty (30) days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.  After review of the resubmitted plan, report, or other deliverable, EPA may: (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring Settling Work Defendants to correct the deficiencies; or (e) any combination of the foregoing.

39.     Material Defects.  If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 37.b(2) or 38 due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 82.  The provisions of Section XIX

(Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the accrual and payment of any stipulated penalties regarding Settling Work Defendants' submissions under this Section.

40.     Implementation.  Upon approval, approval upon conditions, or modification by EPA under Paragraph 37 (Initial Submissions) or Paragraph 38 (Resubmissions), of any plan, report, or other deliverable, or any portion thereof: (a) such plan, report, or other deliverable, or portion thereof, shall be incorporated into and enforceable under this Consent Decree; and (b) Settling Work Defendants shall take any action required by such plan, report, or other deliverable, or portion thereof, subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  The implementation of any non-deficient portion of a plan, report, or other deliverable submitted or resubmitted under Paragraph 37 or 38 shall not relieve Settling Work Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

## XII.  PROJECT COORDINATORS

41.     The EPA Project Coordinator and Alternate Project Coordinator for this Site are:

EPA Project Coordinator
Mitch Cron (3HS22)
U.S. Environmental Protection Agency
1650 Arch Street
Philadelphia, PA 19103
(215) 814-3286 (phone)
(215) 814-3002 (fax)

EPA Alternate Project Coordinator
Kristine Matzko (3HS22)
U.S. Environmental Protection Agency
1650 Arch Street
Philadelphia, PA 19103
(215) 814-5710 (phone)
(215) 814-3002 (fax)

47

Within twenty (20) days after lodging this Consent Decree, Settling Work Defendants, the State and EPA will notify each other, in writing, of the name, address, telephone number, and email address of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five (5) working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made. Settling Work Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. Settling Work Defendants' Project Coordinator shall not be an attorney for any Settling Defendant in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

42.    Plaintiffs may designate other representatives, including, but not limited to, EPA and State employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the NCP, 40 C.F.R. Part 300. EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

43.     EPA's Project Coordinator and Settling Work Defendants' Project Coordinator will meet, at a minimum, on a monthly basis.  When appropriate, a meeting by telephone shall be acceptable.

### XIII.   PERFORMANCE GUARANTEE

44.     In order to ensure the full and final completion of the Work, Settling Work Defendants shall establish and maintain a Performance Guarantee for the benefit of EPA in an amount equal to the "Estimated Cost of the Work," which shall initially be $14,350,772.  The Performance Guarantee, which must be satisfactory in form and substance to EPA, shall be in one or more of the following mechanisms (provided that, if Settling Work Defendants intend to use multiple mechanisms, such multiple mechanisms shall be limited to surety bonds guaranteeing payment, letters of credit, and/or trust funds, unless EPA, in its sole discretion, agrees otherwise):

a.      A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.      One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (1) that has the authority to issue letters of credit and (2) whose letter-of-credit operations are regulated and examined by a U.S. federal or state agency;

c.      A trust fund established for the benefit of EPA that is administered by a trustee (1) that has the authority to act as a trustee and (2) whose trust operations are regulated and examined by a U.S. federal or state agency;

d.      A demonstration by one or more Settling Work Defendants that each such Settling Work Defendant meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the  Estimated Cost of the Work, provided that all other requirements of 40 C.F.R. § 264.143(f) are satisfied; or

e.      A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (1) a direct or indirect parent company of a Settling Defendant; or (2) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with at least one Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it meets the financial test and reporting requirements for owners and operators set forth in subparagraphs (1) through (3) and (5) through (8) of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work that it proposes to guarantee hereunder.

45.     Within forty-five (45) days after the Effective Date, or forty-five (45) days after EPA's approval of the form and substance of Settling Work Defendants' Performance Guarantee, whichever is later, Settling Work Defendants shall secure all executed and/or otherwise finalized instruments or other documents required in order to make the EPA-approved Performance Guarantee(s) legally binding, and such Performance Guarantee(s) shall thereupon be fully effective.  Within forty-five (45) days after the Effective Date, Settling Work Defendants shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to EPA and the United States in accordance with Section XXVI (Notices and Submissions) of this Consent Decree, with a copy to the Chief, Cost Recovery Branch for EPA Region III, 1650 Arch Street, Philadelphia, Pennsylvania 19103, and to the United States and EPA and the State as specified in Section XXVI (Notices and Submissions).

46.     If, at any time after the Effective Date and before issuance of the Certification of Completion of the Work pursuant to Paragraph 51, Settling Work Defendants provide a Performance Guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 44.d or Paragraph 44.e, above, the relevant Settling Work Defendants shall also comply with

the other relevant requirements of 40 C.F.R. § 264.143(f), 40 C.F.R. § 264.151(f) and 40 C.F.R.

§ 264.151(h)(1), relating to these methods unless otherwise provided in this Consent Decree, including

but not limited to: (a) the initial submission of required financial reports and statements from the

relevant entity's chief financial officer ("CFO") and independent certified public accountant ("CPA"), in

the form prescribed by EPA in its financial test sample CFO letters and CPA reports available at:

http://www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-test-samples.pdf; (b) the annual

resubmission of such reports and statements within ninety (90) days after the close of each such entity's

fiscal year; and (c) the notification of EPA within ninety (90) days after the close of any fiscal year in

which such entity no longer satisfies the financial test requirements set forth at 40 C.F.R.

§ 264.143(f)(1).  Solely for purposes of the Performance Guarantee mechanisms specified in this Section

XIII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and

abandonment" shall be deemed to include the Work required under this Consent Decree; the terms

"current closure cost estimate," "current post-closure cost estimate," and "current plugging and

abandonment cost estimate" shall be deemed to include all the Estimated Cost of the Work required

under this Consent Decree; the terms "owner" and "operator" shall be deemed to refer to each Settling

Work Defendant making a demonstration under Paragraph 44.d; and the terms "facility" and "hazardous

waste facility" shall be deemed to include the Site.

      47.      In the event that EPA determines at any time that a Performance Guarantee provided

pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this

Section, whether due to an increase in the estimated cost of completing the Work or for any other

reason, or in the event that any Settling Work Defendant becomes aware of information indicating that a

Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies

the requirements set forth in this Section, whether due to an increase in the estimated cost of completing

the Work or for any other reason, Settling Work Defendants, within thirty (30) days after receipt of

notice of EPA's determination or, as the case may be, within thirty (30) days after any Settling

Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal

for a revised or alternative form of Performance Guarantee listed in Paragraph 44 of this Consent Decree

that satisfies all requirements set forth in this Section XIII.  In seeking approval for a revised or

alternative form of Performance Guarantee, Settling Work Defendants shall follow the procedures set

forth in Paragraph 49.b(2) of this Consent Decree.  Settling Work Defendants' inability to post a

Performance Guarantee for completion of the Work shall in no way excuse performance of any other

requirements of this Consent Decree, including, without limitation, the obligation of Settling Work

Defendants to complete the Work in strict accordance with the terms of this Consent Decree.

48.  Funding for Work Takeover.  The commencement of any Work Takeover pursuant to

Paragraph 100 of this Consent Decree shall trigger EPA's right to receive the benefit of any

Performance Guarantees(s) provided pursuant to Paragraphs 44.a, 44.b, 44.c,  or 44.e, and at such time

EPA shall have immediate access to resources guaranteed under any such Performance Guarantee(s),

whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the

Work Takeover.  Upon the commencement of any Work Takeover, if for any reason EPA is unable to

promptly secure the resources guaranteed under any such Performance Guarantee(s), whether in cash or

in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or in

the event that the Performance Guarantee involves a demonstration of satisfaction of the financial test

criteria pursuant to Paragraph 44.d or Paragraph 44.e(2), Settling Work Defendant(s) (or in the case of

Paragraph 44.e(2), the guarantor) shall immediately upon written demand from EPA deposit into an

account specified by EPA in immediately available funds and without setoff, counterclaim, or condition

of any kind, a cash amount up to but not exceeding the estimated cost of the remaining Work to be

performed as of such date, as determined by EPA.  In addition, if at any time EPA is notified by the

issuer of a Performance Guarantee that such issuer intends to cancel the Performance Guarantee

mechanism it has issued, then, unless Settling Work Defendants provide a substitute Performance

Guarantee mechanism in accordance with this Section XIII no later than thirty (30) days prior to the

impending cancellation date, EPA shall be entitled (as of and after the date that is thirty (30) days prior

to the impending cancellation) to draw fully on the funds guaranteed under the then-existing

Performance Guarantee.  All EPA Work Takeover costs not reimbursed under this Paragraph shall be

reimbursed under Section XVI (Payments for Response Costs).

     49.    <u>Modification of Amount and/or Form of Performance Guarantee</u>.

       a.    <u>Reduction of Amount of Performance Guarantee</u>.  If Settling Work Defendants

believe that the estimated cost to complete the remaining Work has diminished below the amount set

forth in Paragraph 44, above, Settling Work Defendants may, on any anniversary of the Effective Date

of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a

reduction in the amount of the Performance Guarantee provided pursuant to this Section so that the

amount of the Performance Guarantee is equal to the estimated cost of the remaining Work to be

performed.  Settling Work Defendants shall submit a written proposal for such reduction to EPA that

shall specify, at a minimum, the estimated cost of the remaining Work to be performed and the basis

upon which such cost was calculated.  In seeking approval for a revised or alternative form of

Performance Guarantee, Settling Work Defendants shall follow the procedures set forth in

Paragraph 49.b(2) of this Consent Decree.  If EPA decides to accept such a proposal, EPA shall notify

the petitioning Settling Work Defendants of such decision in writing. After receiving EPA's written decision, Settling Work Defendants may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written decision. In the event of a dispute, Settling Work Defendants may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute. No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 47 or 49.b of this Consent Decree.

      b.      <u>Change of Form of Performance Guarantee</u>.

      (1)      If, after the Effective Date of this Consent Decree, Settling Work Defendants desire to change the form or terms of any Performance Guarantee(s) provided pursuant to this Section, Settling Work Defendants may, on any anniversary of the Effective Date of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder. The submission of such proposed revised or alternative Performance Guarantee shall be as provided in Paragraph 49.b(2) of this Consent Decree. Any decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

      (2)      Settling Work Defendants shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed

instruments or other documents required in order to make the proposed Performance Guarantee legally binding. The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Work Defendants shall submit such proposed revised or alternative Performance Guarantee to EPA and the United States in accordance with Section XXVI (Notices and Submissions) of this Consent Decree, with a copy to the Chief, Cost Recovery Branch for EPA Region III, 1650 Arch Street, Philadelphia, Pennsylvania 19103. EPA shall notify Settling Work Defendants in writing of its decision to accept or reject a revised or alternative Performance Guarantee submitted pursuant to this Paragraph. Upon EPA's acceptance of Settling Work Defendants' proposal for a revised or alternative Performance Guarantee, the Estimated Cost of the Work shall be deemed to be the estimated cost of the remaining Work as set forth in Settling Work Defendants' approved proposal. Within ten (10) days after receiving a written decision approving the proposed revised or alternative form of Performance Guarantee, Settling Work Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such Performance Guarantee(s) shall thereupon be fully effective. Settling Work Defendants shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding within thirty (30) days after receiving a written decision approving the proposed revised or alternative Performance Guarantee to EPA and the United States and the State in accordance with Section XXVI (Notices and

Submissions) of this Consent Decree, with a copy to the Chief, Cost Recovery Branch for EPA

Region III, 1650 Arch Street, Philadelphia, Pennsylvania 19103.

      c.     <u>Release of Performance Guarantee</u>. If Settling Work Defendants receive written

notice from EPA in accordance with Paragraph 51 that the Work has been fully and finally completed in

accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Work

Defendants in writing, Settling Work Defendants may thereafter release, cancel, or discontinue the

Performance Guarantee(s) provided pursuant to this Section.  Settling Work Defendants shall not

release, cancel, or discontinue any Performance Guarantee provided pursuant to this Section except as

provided in this Paragraph.  In the event of a dispute, Settling Work Defendants may release, cancel, or

discontinue the Performance Guarantee(s) required hereunder only in accordance with a final

administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).

### XIV.   CERTIFICATION OF COMPLETION

50.     <u>Completion of the Remedial Action</u>.

      a.     Within ninety (90) days after Settling Work Defendants conclude that the

Remedial Action has been fully performed and the Performance Standards have been achieved, Settling

Work Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling

Work Defendants, EPA and the State.  If, after the pre-certification inspection, Settling Work

Defendants still believe that the Remedial Action has been fully performed and the Performance

Standards have been attained, they shall submit a written report requesting certification to EPA for

approval, with a copy to the State, pursuant to Section XI (EPA Approval of Plans, Reports, and Other

Deliverables) within thirty (30) days after the inspection.  In the report, a registered professional

engineer and Settling Work Defendants' Project Coordinator shall state that the Remedial Action has

been completed in full satisfaction of the requirements of this Consent Decree. The written report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a Duly Authorized Representative of a Settling Work Defendant or the Settling Work Defendants' Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Work Defendants in writing of the activities that must be undertaken by Settling Work Defendants pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Work Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 14. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree or require Settling Work Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables).

Settling Work Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.      If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion of the Remedial Action and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendants.  This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants by Plaintiffs).  Certification of Completion of the Remedial Action shall not affect Settling Work Defendants' remaining obligations under this Consent Decree.

51.      Completion of the Work.

a.      Within ninety (90) days after Settling Work Defendants conclude that all phases of the Work have been fully performed, Settling Work Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Work Defendants, EPA and the State.  If, after the pre-certification inspection, Settling Work Defendants still believe that the Work has been fully performed, Settling Work Defendants shall submit to EPA a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the statement set forth in Paragraph 50.a.  If, after review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Work Defendants in writing of the activities that must be undertaken by Settling Work Defendants

pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require

Settling Work Defendants to perform such activities pursuant to this Paragraph to the extent that such

activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in

Paragraph 14. EPA will set forth in the notice a schedule for performance of such activities consistent

with the Consent Decree or require Settling Work Defendants to submit a schedule to EPA for approval

pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Settling Work

Defendants shall perform all activities described in the notice in accordance with the specifications and

schedules established therein, subject to their right to invoke the dispute resolution procedures set forth

in Section XIX (Dispute Resolution).

        b.     If EPA concludes, based on the initial or any subsequent request for Certification

of Completion of the Work by Settling Work Defendants and after a reasonable opportunity for review

and comment by the State, that the Work has been performed in accordance with this Consent Decree,

EPA will so notify Settling Defendants in writing.

## XV.   EMERGENCY RESPONSE

52.    In the event of any action or occurrence during the performance of the Work that causes

or threatens a release of Waste Material from the Site that constitutes an emergency situation or may

present an immediate threat to public health or welfare or the environment, Settling Work Defendants

shall, subject to Paragraph 53, immediately take all appropriate action to prevent, abate, or minimize

such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the

Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is

available, Settling Work Defendants shall notify the EPA Region III Hotline at (215) 814-3255. Settling

Work Defendants shall take such actions in consultation with EPA's Project Coordinator or other

available authorized EPA officer and in accordance with all applicable provisions of the HASPs, the

Contingency Plans, and any other applicable plans or documents developed pursuant to this Consent

Decree. In the event that Settling Work Defendants fail to take appropriate response action as required

by this Section, and EPA or, as appropriate, the State take such action instead, Settling Work Defendants

shall reimburse EPA and the State all costs of the response action under Section XVI (Payments for

Response Costs).

     53.     Subject to Section XXI (Covenants by Plaintiffs), nothing in the preceding Paragraph or

in this Consent Decree shall be deemed to limit any authority of the United States or the State to: (a)

take all appropriate action to protect human health and the environment or to prevent, abate, respond to,

or minimize an actual or threatened release of Waste Material on, at, or from the Site; or, (b) direct or

order such action, or seek an order from the Court, to protect human health and the environment or to

prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from

the Site, subject to Section XXI (Covenants by Plaintiffs).

## XVI. PAYMENTS FOR RESPONSE COSTS

     54.     <u>Payments for Past Response Costs</u>.

     a.     Within thirty (30) days after the Effective Date, Settling Work Defendants shall

pay to EPA $945,117.64 in payment for Past Response Costs. Payment shall be made in accordance

with Paragraphs 58.a (Instructions for Past Response Cost Payments) and 58.c (Instructions for All

Payments).

      b.     The total amount to be paid by Settling Work Defendants pursuant to

Paragraph 54.a shall be deposited in the Central Chemical Special Account within the EPA Hazardous

Substance Superfund to be retained and used to conduct or finance response actions at or in connection

with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

     55.    <u>Payments for Future Response Costs</u>.  Settling Work Defendants shall pay to EPA all

Future Response Costs not inconsistent with the NCP.

      a.     On a periodic basis, EPA will send Settling Work Defendants a bill requiring

payment that includes a cost summary, which includes direct and indirect costs incurred by EPA, its

contractors, and DOJ.  Settling Work Defendants shall make all payments within thirty (30) days after

Settling Work Defendants' receipt of each bill requiring payment, except as otherwise provided in

Paragraph 59, in accordance with Paragraphs 58.b (Instructions for Future Response Cost Payments) and

58.c (Instructions for All Payments).

      b.     The total amount to be paid by Setting Work Defendants pursuant to

Paragraph 55.a shall be deposited in the Central Chemical Special Account within the EPA Hazardous

Substance Superfund to be retained and used to conduct or finance response actions at or in connection

with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

     56.    <u>Reserved</u>.

     57.    <u>Reserved</u>.

     58.    <u>Payment Instructions for Settling Work Defendants</u>.

      a.     <u>Instructions for Past Response Costs Payments</u>.  All payments required, elsewhere

in this Consent Decree, to be made in accordance with this Paragraph 58.a shall be made by Fedwire

Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current

EFT procedures, and in accordance with instructions provided to Settling Work Defendants by the

Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Maryland

after the Effective Date.  The payment instructions provided by the FLU shall include a Consolidated

Debt Collection System ("CDCS") number, which shall be used to identify all payments required to be

made in accordance with this Consent Decree.  The FLU shall provide the payment instructions to:

> William G. Murray
> AECOM
> 625 West Ridge Pike
> Suite E-100
> Conshohocken, PA 19438
> 610-832-6123
> william.g.murray@aecom.com

on behalf of Settling Work Defendants.  Settling Work Defendants may change the individual to receive

payment instructions on their behalf by providing written notice of such change in accordance with

Section XXVI (Notices and Submissions).  When making payments under this Paragraph 58.a, Settling

Work Defendants shall also comply with Paragraph 58.c.


b.	<u>Instructions for Future Response Costs Payments and Stipulated Penalties</u>.  All

payments required, elsewhere in this Consent Decree, to be made in accordance with this Paragraph 58.b

shall be made by Fedwire EFT to:

> Federal Reserve Bank of New York
> ABA  =  021030004
> Account = 68010727
> SWIFT address = FRNYUS33
> 33 Liberty Street
> New York NY 10045
> Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental Protection
> Agency"

When making payments under this Paragraph 58.b, Settling Work Defendants shall also comply with Paragraph 58.c.

        c.      <u>Instructions for All Payments</u>.  All payments made under Paragraph 58.a (Instructions for Past Response Costs Payments) or Paragraph 58.b (Instructions for Future Response Costs Payments) shall reference the CDCS Number, Site/Spill ID Number 03EQ, and DOJ Case Number 90-11-2-1244/1.  At the time of any payment required to be made in accordance with Paragraphs 58.a or 58.b, Settling Work Defendants shall send notice that payment has been made to the United States, and to EPA, in accordance with Section XXVI (Notices and Submissions), and to the EPA Cincinnati Center Office by email at acctsreceivable_cinwd@epa.gov, or by mail at 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268, and to the Docket Clerk (3RC00), United States Environmental Protection Agency, Region III, 1650 Arch Street, Philadelphia, Pennsylvania 19103.

        59.      Settling Work Defendants may contest Future Response Costs billed under Paragraph 55 (Payments for Future Response Costs) if they determine that EPA or the State has made a mathematical error or included a cost item that is not within the definition of Future Response Costs, or if they believe EPA incurred excessive costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP.  Such objection shall be made in writing within thirty (30) days after receipt of the bill and must be sent to the United States (if the United States' accounting is being disputed) or the State (if the State's accounting is being disputed) pursuant to Section XXVI (Notices and Submissions).  Any such objection shall specifically identify the contested Future Response Costs and the basis for objection.  In the event of an objection, Settling Work Defendants shall within the thirty (30)-day period pay all uncontested Future Response Costs to the United States or the State in the manner described in Paragraph 58.b (Instructions for Future Response Cost Payments).  Simultaneously,

Settling Work Defendants shall establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC"), and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. Settling Work Defendants shall send to the United States and the State, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, Settling Work Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States or the State prevails in the dispute, within five (5) days after the resolution of the dispute, Settling Work Defendants shall pay the sums due (with accrued interest) to the United States or the State, if State costs are disputed, in the manner described in Paragraph 58.b (Instructions for Future Response Costs and Stipulated Penalties). After any such payments to the United States, any balance remaining in the escrow account shall be disbursed to the Settling Work Defendants. If Settling Work Defendants prevail concerning any aspect of the contested costs, Settling Work Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States or the State, if State costs are disputed, within five (5) days in the manner described in Paragraph 58.b (Instructions for Future Response Costs and Stipulated Penalties) after resolution of the dispute. After any such payments to the United States, any balance remaining in the escrow account shall be disbursed to Settling Work Defendants. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for

resolving disputes regarding Settling Work Defendants' obligation to reimburse the United States and the State for their Future Response Costs.

60.     Reserved.

61.     <u>Interest</u>.  In the event that the payments required by Paragraph 54 are not made within thirty (30) days after the Effective Date or the payments required by Paragraph 55 are not made within thirty (30) days after the Settling Work Defendants' receipt of the bill, Settling Work Defendants shall pay Interest on the unpaid balance.  The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue on the Effective Date.  The Interest on Future Response Costs shall begin to accrue on the date of the bill.  The Interest shall accrue through the date of Settling Work Defendants' payment.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Work Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 83.  Settling Work Defendants shall make all payments required by this Paragraph in the manner described in Paragraphs 55 and 58.

62.     Reserved.

63.     Reserved.

64.     Reserved.

65.     Reserved.

66.     Reserved.

67.     Reserved.

68.     Reserved.

## XVII.  INDEMNIFICATION AND INSURANCE

69.     <u>Settling Work Defendants' Indemnification of the United States and the State</u>.

a.      The United States and the State do not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Work Defendants as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).  Settling Work Defendants shall indemnify, save and hold harmless the United States, the State, and their officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Work Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Work Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, Settling Work Defendants agree to pay the United States and the State all costs they incur including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or the State based on negligent or other wrongful acts or omissions of Settling Work Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree.  Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Settling Work Defendants in carrying out activities pursuant to this Consent Decree.  Neither Settling Work Defendants nor any such contractor shall be considered an agent of the United States or the State.

b.      The United States and the State shall give Settling Work Defendants notice of any claim for which the United States or the State plans to seek indemnification pursuant to this Paragraph 69, and shall consult with Settling Work Defendants prior to settling such claim.

70.     Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between any Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Work Defendants shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Work Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

71.     No later than fifteen (15) days before commencing any on-site Work, Settling Work Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Paragraph 50.b of Section XIV (Certification of Completion) commercial general liability insurance with limits of five million dollars, for any one occurrence, and automobile liability insurance with limits of one million dollars, combined single limit, naming the United States and the State as additional insureds with respect to all liability arising out of the activities performed by or on behalf of Settling Work Defendants pursuant to this Consent Decree. In addition, for the duration of this Consent Decree, Settling Work Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the

provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Work Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Work Defendants shall provide to EPA and the State certificates of such insurance and a copy of each insurance policy. Settling Work Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date of this Consent Decree. If Settling Work Defendants demonstrate by evidence satisfactory to EPA and the State that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Work Defendants need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor.

## XVIII. FORCE MAJEURE

72.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Work Defendants, of any entity controlled by Settling Work Defendants, or of Settling Work Defendants' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Settling Work Defendants' best efforts to fulfill the obligation. The requirement that Settling Work Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards, or increased costs.

73.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Settling Work Defendants intend or may intend to assert a claim of force majeure, Settling Work Defendants shall orally notify EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the EPA Region III Hazardous Site Cleanup Division, within forty-eight (48) hours of when Settling Work Defendants first knew that the event might cause a delay.  Within five (5) days thereafter, Settling Work Defendants shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Work Defendants' rationale for attributing such delay to a force majeure event; and a statement as to whether, in the opinion of Settling Work Defendants, such event may cause or contribute to an endangerment to public health, welfare, or the environment.  Settling Work Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure.  Settling Work Defendants shall be deemed to know of any circumstance of which Settling Work Defendants, any entity controlled by Settling Work Defendants, or Settling Work Defendants' contractors knew or should have known.  Failure to comply with the above requirements regarding an event shall preclude Settling Work Defendants from asserting any claim of force majeure, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 72, EPA may, in its unreviewable discretion, excuse in writing Settling Work Defendants' failure to submit timely notices under this Paragraph.

74.     If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations on an expedited basis.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Settling Defendants in writing of its decision.  If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay is attributable to a force majeure event, EPA will notify Settling Work Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

75.     If Settling Work Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than fifteen (15) days after receipt of EPA's notice.  In any such proceeding, Settling Work Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Work Defendants complied with the requirements of Paragraphs 72 and 73, above.  If Settling Work Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Work Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX. DISPUTE RESOLUTION

76.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Work Defendants that have not been disputed in accordance with this Section.

77.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed twenty (20) days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

78.     <u>Statements of Position</u>.

        a.      In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within ten (10) days after the conclusion of the informal negotiation period, Settling Work Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States and the State a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Settling Work Defendants. The Statement of Position shall specify Settling Work Defendants' position as to whether formal dispute resolution should proceed under Paragraph 79 (Record Review) or Paragraph 80.

b.      Within fourteen (14) days after receipt of Settling Work Defendants' Statement of Position, EPA will serve on Settling Work Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 79 (Record Review) or Paragraph 80. Within seven (7) days after receipt of EPA's Statement of Position, Settling Work Defendants may submit a Reply.

c.      If there is disagreement between EPA and Settling Work Defendants as to whether dispute resolution should proceed under Paragraph 79 (Record Review) or 80, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if Settling Work Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraph 79 (Record Review) and Paragraph 80.

79.      <u>Record Review</u>.  Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent Decree shall be construed to allow any dispute by Settling Work Defendants regarding the validity of the ROD's provisions.

a.      An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.      The Director of the Hazardous Site Cleanup Division, EPA Region III, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 79.a.  This decision shall be binding upon Settling Work Defendants, subject only to the right to seek judicial review pursuant to Paragraph 79.c and Paragraph 79.d.

c.      Any administrative decision made by EPA pursuant to Paragraph 79.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Work Defendants with the Court and served on all Parties within ten (10) days after receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file a response to Settling Work Defendants' motion.

d.      In proceedings on any dispute governed by this Paragraph, Settling Work Defendants shall have the burden of demonstrating that the decision of the Director of the Hazardous Site Cleanup Division, EPA Region III, is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 79.a.

80.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.      Following receipt of Settling Work Defendants' Statement of Position submitted pursuant to Paragraph 78, the Director of the Hazardous Site Cleanup Division, EPA Region III, will issue a final decision resolving the dispute.  The Director's decision shall be binding on Settling Work Defendants unless, within thirty (30) days after receipt of the decision, Settling Work Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Work Defendants' motion.

b.      Notwithstanding Paragraph N of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

81.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Settling Work Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 90.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that Settling Work Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

# XX.    STIPULATED PENALTIES

82.    Settling Work Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 83 and 84 to the United States or failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure).  "Compliance" by Settling Work Defendants shall include completion of the activities under this Consent Decree, or any work plan or other plan approved under this Consent Decree, identified below, in accordance with all applicable requirements of law, this Consent Decree, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

83.    Stipulated Penalties - Work (Including Payments and Excluding Plans, Reports, and Other Deliverables).

  a.    The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 83.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000.00 | 1st through 14th day |
| $2,000.00 | 15th through 30th day |
| $3,000.00 | 31st day and beyond |

  b.    Failure to comply with requirements of Section VI (Performance of the Work by Settling Work Defendants), Section VII (Remedy Review), Section VIII (Quality Assurance, Sampling, and Data Analysis), Section XI (EPA Approval of Plans and Other Submissions), Section XIII (Performance Guarantee), Section XV (Emergency Response), and Section XVI (Payments for Response Costs).

75

84. <u>Stipulated Penalty - Plans, Reports, and other Deliverables</u>.

      a.      The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 84.b:

| *Penalty Per Violation Per Day* | *Period of Noncompliance* |
|---|---|
| $750.00 | 1st through 14th day |
| $1,500.00 | 15th through 30th day |
| $3,000.00 | 31st day and beyond |

      b.      All requirements of this Consent Decree that are not identified in Paragraph 83.b of this Consent Decree.

85.      In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 100 (Work Takeover) of Section XXI (Covenants by Plaintiffs), Settling Work Defendants shall be liable for a stipulated penalty in the amount of $150,000. Stipulated penalties under this Paragraph are in addition to the remedies available under Paragraphs 48 (Funding for Work Takeover) and 100 (Work Takeover).

86.      All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (a) with respect to a deficient submission under Section XI (EPA Approval of Plans, Reports, and Other Deliverables), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Work Defendants of any deficiency; (b) with respect to a decision by the Director of the Hazardous Site Cleanup Division, EPA Region III, under Paragraph 79.b or 80.a of Section XIX (Dispute Resolution), during the period, if any, beginning on the

21st day after the date that Settling Work Defendants' reply to EPA's Statement of Position is received until the date that the Director of the Hazardous Site Cleanup Division, EPA Region III, issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

87.     Following EPA's determination that Settling Work Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Work Defendants written notification of the same and describe the noncompliance. EPA and the State may send Settling Work Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Work Defendants of a violation.

88.     All penalties accruing under this Section shall be due and payable to the United States and the State within thirty (30) days after Settling Work Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Work Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution) within the thirty (30)-day period. All payments to the United States under this Section shall indicate that the payment is for stipulated penalties and shall be made in accordance with Paragraph 58.b (Instructions for Future Response Cost Payments).

89.     The payment of penalties and Interest, if any, shall not alter in any way Settling Work Defendants' obligation to complete the performance of the Work required under this Consent Decree.

90.     Penalties shall continue to accrue as provided in Paragraph 86 during any dispute resolution period, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA and the State within fifteen (15) days after the agreement or the receipt of EPA's decision or order;

b.      If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Work Defendants shall pay all accrued penalties determined by the Court to be owed to EPA and the State within sixty (60) days after receipt of the Court's decision or order, except as provided in Paragraph 90.c, below;

c.      If the District Court's decision is appealed by any Party, Settling Work Defendants shall pay all accrued penalties determined by the District Court to be owing to the United States and the State into an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within sixty (60) days after receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every sixty (60) days. Within fifteen (15) days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA and the State or to Settling Work Defendants to the extent that they prevail.

91.      If Settling Work Defendants fail to pay stipulated penalties when due, Settling Work Defendants shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Work Defendants have timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 90 until the date of payment; and (b) if Settling Work Defendants fail to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 88 until the date of payments.  If Settling Work Defendants fail to pay stipulated penalties and

Interest when due, the United States or the State may institute proceedings to collect the penalties, as well as Interest.

92.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of Settling Work Defendants' violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the United States shall be limited to either demanding stipulated penalties pursuant to this Section XX of the Consent Decree or pursing civil penalties pursuant to Section 122(*l*) of CERCLA, except in the case of a willful violation of this Consent Decree.

93.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.   COVENANTS BY PLAINTIFFS

94.     <u>Covenants for Settling Defendants by United States and the State</u>.  In consideration of the actions that will be performed and the payments that have or will be made by Settling Defendants under or relating to this Consent Decree, and except as specifically provided in Paragraph 99 (General Reservations of Rights) of this Section, the United States and the State covenant not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA and Section 7003 of RCRA for the Work, Past Response Costs, and Future Response Costs.  These covenants shall take effect upon the Effective Date.  These covenants are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree.  These covenants extend only to Settling Defendants and do not extend to any other person.

95.     <u>Reserved</u>.

96.     <u>Reserved</u>.

97.     <u>Reserved</u>.

98.     <u>Reserved</u>.

99.     <u>General Reservations of Rights</u>.  The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiffs' covenants.  Notwithstanding any other provision of this Consent Decree, the United States and the State reserve all rights against Settling Defendants with respect to:

a.     liability for failure by Settling Defendants to meet a requirement of this Consent Decree;

b.     liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.     liability based on the ownership of the Site by Settling Defendants when such ownership commences after signature of this Consent Decree by Settling Defendants;

d.      liability based on the operation of the Site by Settling Defendants when such operation commences after signature of this Consent Decree by Setting Defendants and does not arise solely from Settling Defendants' performance of the Work;

e.     liability based on Settling Defendants' transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in

connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Defendants;

    f.  liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

    g.  criminal liability;

    h.  liability for violations of federal or state law that occur during or after implementation of the Work; and

    i.  liability, prior to achievement of Performance Standards in accordance with Paragraph 13 for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 14 (Modification of the Work);

    j.  liability for additional operable units at the Site or the final response action;

    k.  liability for costs that the United States will incur regarding the Site but that are not within the definition of Future Response Costs; and

    l.  liability for costs incurred or to be incurred by ATSDR regarding the Site.

  100. <u>Work Takeover</u>.

    a.  In the event EPA determines that Settling Work Defendants have (1) ceased implementation of any portion of the Work, or (2) are seriously or repeatedly deficient or late in their performance of the Work, or (3) are implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Work Defendants. Any Work Takeover Notice issued by EPA will specify the

81

grounds upon which such notice was issued and will provide Settling Work Defendants a period of ten (10) days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.      If, after expiration of the ten-day notice period specified in Paragraph 100.a, Settling Work Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portions of the Work as EPA deems necessary ("Work Takeover").  EPA shall notify Settling Work Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 100.b.  Funding of Work Takeover costs is addressed under Paragraph 48.

c.      Settling Work Defendants may invoke the procedures set forth in Paragraph 79 (Record Review), to dispute EPA's implementation of a Work Takeover under Paragraph 100.b. However, notwithstanding Settling Work Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 100.b until the earlier of (1) the date that Settling Work Defendants remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice; or (2) the date that a final decision is rendered in accordance with Paragraph 79 (Record Review) requiring EPA to terminate such Work Takeover.

101.    Notwithstanding any other provision of this Consent Decree, the United States and the State retain all authority and reserve all rights to take any and all response actions authorized by law.

## XXII.  COVENANTS BY SETTLING DEFENDANTS

102.    Covenants by Settling Defendants.  Subject to the reservations in Paragraph 105, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States or the State with respect to the Work, past response actions regarding the Site, Past Response Costs, Future Response Costs, and this Consent Decree, including, but not limited to:

      a.    any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112 or 113, or any other provision of law;

      b.    any claims under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Work, past response actions regarding the Site, Past Response Costs, Future Response Costs, and this Consent Decree; or

      c.    any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Maryland Constitution, the Tucker Act, 28 U.S.C. §1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law.

103.    Reserved.

104.    Except as provided in Paragraph 109 (Claims Against De Micromis Parties), Paragraph 111 (Claims Against Ability to Pay Parties), and Paragraph 118 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States or the State brings a cause of action or issues an order pursuant to any of the reservations in Section XXI (Covenants by Plaintiffs), other than in Paragraphs 99.a (claims for failure to meet a requirement of this Consent Decree), 99.g (criminal liability), and 99.h (violations of federal/state law during or after implementation of the Work), but only

to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States or the State is seeking pursuant to the applicable reservation.

105.    Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, or brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Work Defendants' plans, reports, other deliverables or activities.

106.    Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

107.    Reserved.

108.    Reserved.

109.    <u>Claims Against De Micromis Parties</u>.  Settling Defendants agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for all matters relating to the Site against any person where the person's liability to Settling Defendants with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous

substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material containing hazardous substances contributed by such person to the Site was less than 110 gallons of liquid materials or 200 pounds of solid materials.

110. The waiver in Paragraph 109 (Claims Against De Micromis Parties) shall not apply to any claim or cause of action that a Settling Defendant may have against any person meeting the criteria in Paragraph 109 if such person asserts a claim or cause of action relating to the Site against such Settling Defendant. This waiver also shall not apply to any claim or cause of action against any person meeting the criteria in Paragraph 109 if EPA determines:

a. that such person has failed to comply with any EPA requests for information or administrative subpoenas issued pursuant to Sections 104(e) or 122(e) of CERCLA, 42 U.S.C. § 9604(e) or 9622(e), or Section 3007 of RCRA, 42 U.S.C. § 6927, or has impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Site, or has been convicted of a criminal violation for the conduct to which this waiver would apply and that conviction has not been vitiated on appeal or otherwise; or

b. that the materials contributed to the Site by such person contributed significantly, or could contribute significantly, either individually or in the aggregate, to the costs of response action or natural resources restoration at the Site.

111. <u>Claims Against Ability to Pay Parties</u>. Settling Defendants agree not to assert any claims or causes of action and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for response costs relating to the Site against any person that has entered into a final settlement based on limited ability to

pay with EPA with respect to the Site. This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

112. Reserved.

## XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION

113. Except as provided in Paragraph 109 (Claims Against De Micromis Parties) and Paragraph 111 (Claims Against Ability to Pay Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law. Except as provided in Paragraph 109 (Claims Against De Micromis Parties) and Paragraph 111 (Claims Against Ability to Pay Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2) and (3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

114. The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled, as of the Effective Date, to protection from

contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree. For purposes of this Consent Decree, "matters addressed" shall include the Work, Past Response Costs and Future Response Costs.

115. The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the United States in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

116. Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States and the State in writing no later than sixty (60) days prior to the initiation of such suit or claim.

117. Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States and the State within ten (10) days after service of the complaint on each Settling Defendant. In addition, each Settling Defendant shall notify the United States and the State within ten (10) days after service or receipt of any Motion for Summary Judgment and within ten (10) days after receipt of any order from a court setting a case for trial.

118. <u>Res Judicata and Other Defenses</u>. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue

preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the

United States or the State in the subsequent proceeding were or should have been brought in the instant

case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to

sue set forth in Section XXI (Covenants by Plaintiffs).

## XXIV. ACCESS TO INFORMATION

119.    Settling Work Defendants shall provide to EPA and the State, upon request, copies of all

records, reports, documents, and other information (including records, reports, documents, and other

information in electronic form) (hereinafter referred to as "Records") within their possession or control

or that of their contractors or agents relating to activities at the Site or to the implementation of this

Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests,

trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or

information relating to the Work.  Settling Work Defendants shall also make available to EPA and the

State, for purposes of investigation, information gathering, or testimony, their employees, agents, or

representatives with knowledge of relevant facts concerning the performance of the Work.

120.    <u>Business Confidential and Privileged Documents</u>.

a.      Settling Defendants may assert business confidentiality claims covering part or all

of the Records submitted to Plaintiffs under this Consent Decree to the extent permitted by and in

accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), or 40 C.F.R. Part 2, Subpart B.

Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part

2, Subpart B.  If no claim of confidentiality accompanies Records when they are submitted to EPA and

the State, or if EPA has notified Settling Defendants that the Records are not confidential under the

standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendants.

        b.      Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendants assert such a privilege in lieu of providing Records, they shall provide Plaintiffs with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendants. If a claim of privilege applies to only a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only. Settling Defendants shall retain all Records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor.

        c.      No Records created or generated pursuant to the requirements of this Consent Decree shall be withheld from the United States or the State on the grounds that they are privileged or confidential.

121.    No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV.  RETENTION OF RECORDS

122.    Until ten (10) years after Settling Defendants' receipt of EPA's notification pursuant to Paragraph 51.b (Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or

that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site. Each Settling Work Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Work Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

123. Reserved.

124. At the conclusion of this record retention period, Settling Work Defendants shall notify the United States and the State at least ninety (90) days prior to the destruction of any such Records, and, upon request by the United States or the State, Settling Work Defendants shall deliver any such Records to EPA or the State. If the United States has not responded to Settling Work Defendants' notice prior to the time Settling Work Defendants intend to destroy the Records, Settling Work Defendants shall deliver all such Records to EPA no earlier than ten (10) days after providing an additional written notice that such Records will be delivered, unless EPA provides otherwise after receiving such notice. Settling Work Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Work Defendants assert such a privilege, they shall provide Plaintiffs with the following: (a) the title of the Record; (b) the date of the

Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record;

(d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and

(f) the privilege asserted by Settling Work Defendants.  If a claim of privilege applies only to a portion

of a Record, the Record shall be provided to the United States in redacted form to mask the privileged

portion only.  Settling Work Defendants shall retain all Records that they claim to be privileged until the

United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has

been resolved in the Settling Work Defendants' favor.  However, no Records created or generated

pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are

privileged or confidential.

125.    Each Settling Defendant certifies individually that, to the best of its knowledge and

belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed

of any Records (other than identical copies) relating to its potential liability regarding the Site since the

earlier of notification of potential liability by the United States or the State or the filing of suit against it

regarding the Site and that it has fully complied with any and all EPA and State requests for information

regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and

9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

## XXVI.  NOTICES AND SUBMISSIONS

126.    Whenever, under the terms of this Consent Decree, written notice is required to be given

or a report or other document is required to be sent by one Party to another, it shall be directed to the

individuals at the addresses specified below, unless those individuals or their successors give notice of a

change to the other Parties in writing.  All notices and submissions shall be considered effective upon

receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete

satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the State, and Settling Defendants, respectively.  Notices required to be sent to EPA, and not to the United States, under the terms of this Consent Decree should not be sent to the U.S. Department of Justice.

  As to the United States:     Chief, Environmental Enforcement Section
                 Environment and Natural Resources Division
                 U.S. Department of Justice
                 P.O. Box 7611
                 Washington, D.C.  20044-7611
                 Re: DOJ # 90-11-2-1244/1

                 Robin E. Eiseman
                 Senior Assistant Regional Counsel (3RC41)
                 U.S. Environmental Protection Agency Region III
                 1650 Arch Street
                 Philadelphia, PA 19103
                 eiseman.robin@epa.gov

  As to EPA:          Director, Hazardous Site Cleanup Division (3HS00)
                 U.S. Environmental Protection Agency Region III
                 1650 Arch Street
                 Philadelphia, PA 19103

                 Mitch Cron
                 EPA Project Coordinator (3HS22)
                 U.S. Environmental Protection Agency Region III
                 1650 Arch Street
                 Philadelphia, PA 19103
                 cron.mitch@epa.gov

  As to the State:       Jeff Harp
                 Project Geologist
                 Land Restoration Program
                 Maryland Department of the Environment
                 1800 Washington Blvd.
                 Baltimore, MD 21230
                 jeffrey.harp@maryland.gov

<u>As to the Settling Defendants</u>:      William G. Murray
AECOM
625 West Ridge Pike
Suite E-100
Conshohocken, PA 19428
william.g.murray@aecom.com

## XXVII.      RETENTION OF JURISDICTION

127.    This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution).

## XXVIII.      APPENDICES

128.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the description and/or map of the Site.

"Appendix C" is the complete list of Settling Cash Defendants.

"Appendix D" is the complete list of Settling Work Defendants.

"Appendix E" is the draft Environmental Covenant.

## XXIX. COMMUNITY INVOLVEMENT

129.    Settling Work Defendants shall propose to EPA and the State their participation in the community involvement plan to be developed by EPA.  EPA will determine the appropriate role for Settling Work Defendants under the community involvement plan.  Settling Work Defendants shall also cooperate with EPA and the State in providing information regarding the Work to the public. As

93

requested by EPA or the State, Settling Work Defendants shall participate in the preparation of such

information for dissemination to the public and in public meetings which may be held or sponsored by

EPA or the State to explain activities at or relating to the Site.  Costs incurred by the United States under

this Section, including costs of any technical assistance grant under Section 117(e) of CERCLA,

42 U.S.C. § 9617(e), shall be considered Future Response Costs that Settling Work Defendants shall pay

pursuant to Section XVI (Payments for Response Costs).

## XXX.   MODIFICATION

130.    Except as provided in Paragraph 14 (Modification of the Work Plan), material

modifications to this Consent Decree, including the Work, shall be in writing, signed by the United

States and Settling Defendants, and shall be effective upon approval by the Court.  Except as provided in

Paragraph 14, non-material modifications to this Consent Decree, including the Work, shall be in

writing and shall be effective when signed by duly authorized representatives of the United States and

Settling Defendants.  All modifications to the Consent Decree, other than the Work, also shall be signed

by the State, or a duly authorized representative of the State, as appropriate.  A modification to the Work

shall be considered material if it fundamentally alters the basic features of the selected remedy within

the meaning of 40 C.F.R. § 300.435(c)(2)(ii).  Before providing its approval to any modification to the

Work, the United States will provide the State with a reasonable opportunity to review and comment on

the proposed modification.

131.    Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce,

supervise, or approve modifications to this Consent Decree.

## XXXI. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

132.    This Consent Decree shall be lodged with the Court for a period of not less than thirty

(30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C.

§ 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its

consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that

the Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants consent to the entry

of this Consent Decree without further notice.

133.    If for any reason the Court should decline to approve this Consent Decree in the form

presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement

may not be used as evidence in any litigation between the Parties.

## XXXII.          SIGNATORIES/SERVICE

134.    Each undersigned representative of a Settling Defendant to this Consent Decree and the

Assistant Attorney General for the Environment and Natural Resources Division of the Department of

Justice and the Director of Land Management Administration for the State certifies that he or she is fully

authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind

such Party to this document.

135.    Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this

Court or to challenge any provision of this Consent Decree unless the United States has notified Settling

Defendants in writing that it no longer supports entry of the Consent Decree.

136.    Each Settling Defendant shall identify, on the attached signature page, the name, address,

and telephone number of an agent who is authorized to accept service of process by mail on behalf of

that Party with respect to all matters arising under or relating to this Consent Decree. Settling

Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. The parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXXIII.  FINAL JUDGMENT

137.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

138.    Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and Settling Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXXIV.  RELATIONSHIP BETWEEN SETTLEMENT AGREEMENT AND CONSENT DECREE

139.    The United States and the Settling Defendants have agreed that certain portions of the Work have commenced in accordance with the Settlement Agreement, as amended, prior to the Effective Date. Upon the Effective Date, and as set forth in Section XXVII of the Settlement Agreement, the Settlement Agreement shall terminate. It is agreed by the Parties, that upon termination of the Settlement Agreement due to entry of this Consent Decree, performance of work commenced under the Settlement Agreement shall continue under and in accordance with the provisions of this

Consent Decree, and in accordance with the EPA-approved schedules and requirements developed under

the Settlement Agreement. To the extent that Settling Defendants have fulfilled obligations under the

Settlement Agreement that are also required by this Consent Decree, Settling Defendants shall also be

deemed to have fulfilled such obligations under this Consent Decree.

SO ORDERED THIS **29**th DAY OF *SEPTEMBER* 201**5**.

_Richard D. Bennett_

United States District Judge

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR THE UNITED STATES OF AMERICA**:

_____
Date

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

_____
Date

_____
ERICA PENCAK
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-1543
Fax: (202) 514-0097
Email: erica.pencak@usdoj.gov

ROD J. ROSENSTEIN
United States Attorney
District of Maryland

_____
Date

By: TARRA DESHIELDS
Assistant United States Attorney
District of Maryland
36 S. Charles Street 4th Floor
Baltimore, MD 21201

98

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR THE UNITED STATES OF AMERICA**:

_____
Date

_____
JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

8/7/15
_____
Date

_____
ERICA PENCAK
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-1543
Fax: (202) 514-0097
Email: erica.pencak@usdoj.gov

ROD J. ROSENSTEIN
United States Attorney
District of Maryland

8/5/15
_____
Date

By: TARRA DESHIELDS
Assistant United States Attorney
District of Maryland
36 S. Charles Street 4th Floor
Baltimore, MD 21201

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema</u> <u>Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR THE UNITED STATES ENVIRONMENTAL**
**PROTECTION AGENCY:**

7/23/15
Date

SHAWN M. GARVIN
Regional Administrator, Region III
U.S. Environmental Protection Agency
1650 Arch Street
Philadelphia, PA 19103

7-23-2015
Date

MARY COE
Acting Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103

7/21/15
Date

ROBIN E. EISEMAN
Senior Assistant Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR THE STATE OF MARYLAND:**

7/23/15
Date

HILARY MILLER
Acting Director, Land Management Administration
1800 Washington Boulevard
Baltimore, Maryland 21230

Approved as to Legal Sufficiency:

7/22/15
Date

MATTHEW ZIMMERMAN
Office of the Attorney General
Maryland Department of the Environment

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR ARKEMA INC., formerly known as The Pennsylvania Salt Manufacturing Company, Pennsalt Chemicals Corporation, and Pennsalt Corporation, and successor by merger to The Pennsylvania Salt Manufacturing Company of Washington**

7-14-15
Date

Name (print): Danny Kite
Title: President Legacy Site Services LLC
Address: as agent for ARKEMA INC.
1201 Louisiana St.
HOUSTON, TX 77002

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Doug Lootzenhiser
Title: VP Legacy Site Services LLC
Address: 486 Thomas Way Suite 110
Phone: Exton, PA 19341-2528
email:
(610) 594-4424

doug.Lootzenhiser @ total.com

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR BAYER CROPSCIENCE, LP**

21 July 2015
Date

Name (print): Robert C. Lockemer
Title: Head QHSE NA
Address: 2 T.W. Alexander Drive
Research Triangle Park, NC
27709

2

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Nancy M. Wilms
Title: Partner, Edgcomb Law Group LLP
Address: 333 North Glenoaks Blvd. Ste 610
Phone: Burbank, CA 91502
email: (818) 861-7619
nwilms@edgcomb-law.com

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR FMC CORPORATION**

7/16/15
Date

Name (print): Barry J. Crawford
Title: VP-Operations
Address: 1735 Market Street
Philadelphia, PA 19103

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): John F. Stillmun
Title: Assistant General Counsel
Address: 1735 Market Street
Phone: Philadelphia, PA 19103
email: (215) 299-6989
John.Stillmun@fmc.com

103

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. Arkema Inc., et al., relating to the Central Chemical Superfund Site.

**FOR HONEYWELL INTERNATIONAL, INC.**

7/20/15
Date

_John J. Morris_

Name (print): JOHN J. MORRIS
Title: Remediation Director
Address: 101 Columbia RD.
Morristown, NJ 07962

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Margaret W. Tindall
Title:
Address: 233 E. Redwood St. Baltimore, MD
Phone: 410-576-4145
email: mwitherup@gfrlaw.com

104

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR LEBANON SEABOARD CORPORATION**

July 20, 2015
Date

Name (print): _____
Title: *President*
Address: *1600 East Cumberland Street*
*Lebanon, Pa 17042*

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Donald R. Wagner, PG
Title:          Stevens & Lee
Address: 111 N. Sixth St., Reading, PA 19601
Phone:    (610) 478-2216
email:      drw@stevenslee.com

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR MONTROSE CHEMICAL CORPORATION OF CALIFORNIA**

July 21, 2015
Date

_Joseph C Kelly_

Name (print):
Title:          President
Address:

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Joseph C. Kelly
Title:          President
Address:
Phone:
email:   jkelly@montrosechemical.com

106

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

July 16, 2015

Date

**FOR OCCIDENTAL CHEMICAL CORPORATION,** AS A SUCCESSOR OF DIAMOND SHAMROCK CHEMICALS COMPANY

Name (print):  Scott A. King
Title: Vice President, General Counsel and Secretary
Address: 5005 LBJ Freeway, Ste. 2200
           Dallas, Texas 75244

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  CT Corporation System
Title:
Address: 1999 Bryan Street, Suite 900, Dallas, TX 75201
Phone:
email:

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.,</u> relating to the Central Chemical Superfund Site.

**FOR OLIN CORPORATION**

July 13, 2015
Date

Name (print):  Curtis M. Richards
Title:  Corp VP, EH&S
Address: 3855 N Ocoee St., Ste 200
    Cleveland, TN 37312

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):  Garland E. Hilliard
Title:  Director, Environmental Remediation
Address: 3855 N Ocoee St., Ste 200, Cleveland, TN 37312
Phone: 423-336-4479
email: GEHilliard@olin.com

108

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.,</u> relating to the Central Chemical Superfund Site.

**FOR ROHM AND HAAS COMPANY**

| | |
|---|---|
| 7/15/15 | *Edward F. Tokarski* (signature) |
| Date | Name (print):  Edward F Tokarski |
| | Title:  Remediation Leader |
| | Address:  310 George Paterson Blvd. |
| | Suite 100 |
| | Bristol PA  19007 |

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): *The Corporation Trust Incorporated*
Address: *351 West Camden Street*
*Baltimore, MD 21201*
Phone: 410-539-2837

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR RHONE-POULENC**

Date 8/21/15

Name (print): Peter Alpert
Title: Counsel For Rhone-Poulenc
Address: Ropes + Gray LLP
800 Boylston St. Boston MA 02199

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Peter Alpert
Title: Counsel For Rhone-Poulenc
Address: Ropes + Gray LLP, Boston
Phone: 617-951-7906
email: peter.alpert@ropesgray.com

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR SHELL OIL COMPANY**

7-7-15
Date

Name (print): WE Platt
Title: Attorney in fact
Address: 910 Louisiana, Houston TX 77002

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): The Corporation Trust Incorporated
Title:
Address: 351 West Camden Street
Baltimore, MD 21201
Phone: (410) 539-2837
email:

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR SYNGENTA CROP PROTECTION, LLC.**

7/15/2015
Date

Name (print): Ana Davis
Title: Head HSE+S, NA
Address: Greensboro, NC

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Michael J. Bogle
Title:     Attorney
Address:    550 S. Main St., Ste 400, Greenville, SC
Phone:     (864) 255-5416     29601
email:     mbogle@wcsr.com

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR THE CHEMOURS COMPANY FC, LLC**

July 15, 2015
Date

Name (print): Bradley Pulick

Title: Senior Counsel

Address: 1007 Market Street
Wilmington, DE 19807

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): The Corporation Trust Incorporated

Title:

Address: 351 West Camden Street
Baltimore, Maryland 21201

~~Phone:~~

~~email:~~

113

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR UNION CARBIDE CORPORATION**

_7/15/15_
Date

Name (print): ROBERT A. CASTENBERRY JR
Title: REMEDIATION LEADER UNDER
Address: SERVICE AGREEMENT TO UCC
310 GEORGE PATTERSON BLVD, SUITE ___
BRISTOL PA 19007

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title:
Address:
Phone:
email:

114

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. Arkema Inc., et al., relating to the Central Chemical Superfund Site.

**FOR WILMINGTON SECURITIES, INC.**

_Wanda M. Cook_

July 14, 2015
Date

Name (print):  Wanda M. Cook
Title:  President
Address:  100 West Commons Boulevard, Suite 303
New Castle, DE 19720

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):  Wanda M. Cook
Title:  President
Address:  100 West Commons Boulevard, Suite 303
New Castle, DE 19720
Phone:  (302) 655-4133
email:  WMCook@WinvestCo.com

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Arkema Inc., et al.</u>, relating to the Central Chemical Superfund Site.

**FOR 21ST CENTURY FOX AMERICA, INC. (F/K/A NEWS AMERICA INCORPORATED, AND SUCCESSOR TO NEWS PUBLISHING AUSTRALIA LIMITED)**

<u>July 16, 2015</u>
Date

Name (print): Peter Simshauser
Title:        Attorney
Address:      500 Boylston St., Boston, MA 02116

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Peter Simshauser
Title:        Attorney
Address:      Skadden, Arps, Slate, Meagher & Flom
              500 Boylston St., Boston, MA 02116
Phone:        (617) 573-4880
email:        peter.simshauser@skadden.com

116